IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| State of ALABAMA, *et al.*,<br>*Plaintiffs*,<br>v.<br>Miguel CARDONA, in his official capacity as the U.S. Secretary of Education, *et al.*,<br>*Defendants*. | Case No. 7:24-cv-533-GWB |

## DECLARATION OF ERIC MACKEY
## (ALABAMA)

1. I am over the age of 18 years and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, would competently testify to them.

2. I am the State Superintendent of Education for the Alabama State Department of Education. I have been in this position since 2018.

3. My responsibilities as State Superintendent include the oversight and implementation of federal education grant programs for the Alabama Department of Education. I have personal knowledge about Alabama's relationship with the federal government, especially the U.S. Department of Education (or ED).

4. According to the most recent available data, my Department supports the education of approximately 726,735 K-12 students in Alabama. The State has over 1,512 public schools and 556 private schools.

5. My Department administers the distribution of state and federal funds to all K-12 public schools in Alabama. All K-12 public-school districts receive federal funds and are subject to the requirements of Title IX.

1

6. Public primary and secondary education institutions received approximately $1.8 billion in federal funding in the most recent fiscal year.

7. I understand that, on April 19, 2024, the U.S. Department of Education published a new regulation under Title IX, titled *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*. That regulation, among other things, redefines "sex" to include gender identity and sexual orientation, broadens the definition of sexual harassment, and creates new enforcement procedures under Title IX.

8. Unless a court steps in, this new rule will harm Alabama, its schools, and its children.

9. As I understand it, from my experience as State Superintendent of Education, the rule appears to conflict with many Alabama laws that govern K-12 institutions. *See, e.g.*, Ala. Code § 16-1-54(b) ("A public K-12 school shall require every multiple occupancy restroom or changing area designated for student use to be used by individuals based on their biological sex."); Ala. Code § 16-1-52 ("Participation in athletic events to be based on biological sex of athletes."); Ala. Code § 26-26-5 ("No nurse, counselor, teacher, principal, or other administrative official at a public or private school attended by a minor shall do either of the following: (1) Encourage or coerce a minor to withhold from the minor's parent or legal guardian the fact that the minor's perception of his or her gender or sex is inconsistent with the minor's sex. (2) Withhold from a minor's parent or legal guardian information related to a minor's perception that his or her gender or sex is inconsistent with his or her sex.").

10. Schools that do not bring their policies in line with ED's rule face severe consequences. If ED determines that any program or activity at one of Alabama's K-12

2

institutions is noncompliant with the requirements of Title IX, ED can terminate federal funding to that program or activity. Alabama's K-12 institutions use federal funds for many purposes, including but not limited to providing supplemental educational support, materials, and enrichment for students; providing non-academic support for students; providing professional learning opportunities for teachers; support and assistance for special education students; and providing much needed technology for student use. The loss of federal funds to Alabama's K-12 institutions would require these institutions either to eliminate certain educational services currently offered or to seek new funding to pay for those services. And these proceedings—even just investigations by the federal government—are expensive, time-consuming, and distracting for schools, school districts, school officials, the State, and most importantly, students.

11. Moreover, compliance with the new rule is burdensome and costly. It will take substantial time and money to review the rule and existing policies, to determine what the rule requires, and to formulate compliance with all its many additional requirements. To take one example, public-school districts in Alabama have Title IX policies that are *Davis*-compliant that will need to be changed to comply with the rule. *See, e.g., Policy Manual* §6.10, Covington Cnty. Schs., perma.cc/GP8L-5VNA; *Policy Manual* §6.12, Baldwin Cnty. Public Schs., perma.cc/2GXK-9SSE; *Policy 6.11: Sexual Harassment*, Madison County Sch. Sys., bit.ly/3vWwlki. All these policies will have to be reviewed, rewritten, and reapproved, which is costly and burdensome. It will also take time and additional resources to train officials on the rule and the new policies implementing it.

12. The rule also substantially expands recipients' enforcement obligations. The rule not only adds responsibility over gender identity and sexual orientation and expands the definition of harassment, but also requires recipients "to promptly and effectively end any sex discrimination in its education program or activity, prevent its recurrence, and remedy its effects"—even when not deliberately indifferent, even when there is no complaint (oral or written), even when the complaint is withdrawn. And it requires recipients to provide supportive measures when there is no complaint, during investigations and grievance procedures, and even after a complaint is dismissed. Following these broader requirements is more onerous than following the current, narrower ones. If the rule goes into effect, compliance costs and burdens for Alabama schools will increase substantially and distract educators from the most important work of providing instruction to Alabama's students.

13. The rule also unnecessarily exposes Alabama and its schools to possible litigation costs and liability. Lawsuits take critical time and resources away from educating students and are often expensive, time-consuming, and distracting for schools, school districts, school officials, and the State. And the threat of liability, including large awards of attorney's fees, can be devastating.

14. By expanding the definition of harassment and removing deliberate indifference as a liability requirement, the rule puts Alabama schools in an impossible position. If they do not adopt ED's new definition of harassment, then they risk enforcement actions by ED. If they do adopt ED's definition, they run the risk of constitutional lawsuits.

15. The same is true for the rule's provisions reducing procedural protections for the accused. Some of these procedures are mandatory. And though some purport to be

4

optional, schools will feel substantial pressure to adopt them because ED can and has brought enforcement actions against recipients who lack them. But if recipients decrease procedural protections for the accused, they risk litigation for sex-based discrimination or due-process violations.

16. A similar situation exists regarding the rule's redefinition of "sex discrimination" to include gender identity. The rule requires eliminating female-only spaces, even in sensitive areas like bathrooms and locker rooms, which conflicts with existing Alabama law. And constitutional lawsuits have been filed against schools that refuse to notify or tell parents information about their children's professed gender identity at school.

17. The State of Alabama also has less control over the policies and practices of its private schools and charter schools. Yet the rule will directly change the policies and practices at those schools. Alabama has a substantial interest in ensuring that none of its female students are discriminated against by being forced to compete against male students in athletics or share sensitive and private spaces with them. And it harms Alabama if its students' educations are compromised by policies that prevent the free exchange of ideas, punish students without adequate process, or "affirm" students' claimed gender identity without parental input or consent.

Per 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this the 7th day of May, 2024.

_____
Eric G. Mackey
Alabama State Superintendent of Education