# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

State of ALABAMA, *et al.*,

*Plaintiffs*,

v.

Miguel CARDONA, in his official capacity as the U.S. Secretary of Education, *et al.*,

*Defendants*.

Case No. 7:24-cv-533-GWB

## DECLARATION OF EMILY SIKES
## (FLORIDA)

1. I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, would competently testify to them.

2. I am the Interim Vice Chancellor of Academic and Student Affairs for the Board of Governors of the State University System of Florida ("BOG" or "Board"). I have been in this position since 2023 and have been with the BOG since 2016, serving in various roles.

3. As Interim Vice Chancellor, my responsibilities include the oversight of academic and student affairs for the Board Office, which includes topics and issues in academic programs, student affairs, strategic planning, economic development and workforce, research, and supporting the Board's committees in those areas. I routinely work with counterparts at each public university, such as the provosts, vice presidents for student affairs, vice presidents for research, admissions directors, and registrars.

4. The Board oversees the State University System in Florida, which is the second largest public university system in the nation. The system has 12 public universities and supports the education of approximately 430,000 students in Florida.

5. All of Florida's public universities receive federal funds and are subject to the requirements of Title IX.

6. I understand that, on April 29, 2024, the U.S. Department of Education ("USED") published a new regulation under Title IX, titled *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*. That regulation, among other things, redefines "sex" to include gender identity and sexual orientation, broadens the definition of sexual harassment, and creates new enforcement procedures under Title IX.

7. Unless a court steps in, this new rule will harm Florida, its universities, and its students.

8. The rule conflicts with Florida laws that govern public universities. *See, e.g.*, Fla. Stat. Ann. §553.865 (bathrooms); Fla. Stat. Ann. §1006.205 (sports); Fla. Stat. §1000.05(3) (discrimination in sports).

9. If any program or activity at one of Florida's public universities is determined not to comply with the requirements of Title IX, USED can terminate USED federal funding to the universities.

10. Compliance with the new rule is burdensome and costly. The rule is over a thousand pages long; it will take substantial time and money to review the rule and existing policies, to determine what the rule requires, and to act to come into compliance with it. To take one example, Florida's public universities have Title IX policies. All these policies will

have to be reviewed, rewritten, and reapproved, which is costly and burdensome. It will also take time and money to train officials on the rule and the new policies implementing it.

11. USED agrees. It estimates that the compliance costs will be "$4.6 million to $18.8 million over ten years." 89 Fed. Reg. at 33,851, 33,861. It "acknowledges" that "it will take some time to review requirements and revise policies and procedures to align with [the rule's] requirements." *Id.* at 33,851. It will cost "time," and money "reading and understanding the regulations; revising policies; publishing notices of nondiscrimination; training Title IX Coordinators; updating training materials;" "conduct[ing] additional training"; and more. *Id.* at 33,851, 33,548. USED also admits that recipients will see "an increase in Title IX complaints" they must administer, a "10 percent increase in the number of investigations" they must conduct, an "increase" in the "supportive measures" they must provide, and an "increase" in "responsiveness to all reports and complaints of sex discrimination." *Id.* at 33,483, 33,492, 33,850, 33,862, 33,868-69.

12. The rule also exposes Florida and its universities to litigation costs and liability. Lawsuits are expensive, time-consuming, and distracting for universities, university officials, and the State. And the threat of liability, including large awards of attorney's fees, can be devastating.

13. The rule puts universities in a catch-22. If they do not adopt USED's new definition of harassment or the revised procedural protections for the accused, then they risk enforcement actions by USED. But if they do adopt USED's revisions, then they risk lawsuits from students, faculty, and the accused.

14. The same is also true for the rule's redefinition of "sex discrimination" to include gender identity. The rule requires eliminating female-only spaces, even in sensitive areas like bathrooms and locker rooms, which violates Florida law and makes an unsafe environment for women.

15. Florida has a substantial interest in ensuring that none of its female students are discriminated against by being forced to compete against men in athletics or share sensitive and private spaces with them. It harms Florida if its students' educations are compromised by policies that prevent the free exchange of ideas or that punish students without adequate process. It also harms Florida when our public universities are forced to make impossible decisions about complying with this illegal rule or Florida's duly enacted laws.

Per 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May 8, 2024

_____
Emily Sikes, Interim Vice Chancellor of
Academic and Student Affairs
Board of Governors of the State University
System of Florida