IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

State of ALABAMA, *et al.*,

                      *Plaintiffs*,

v.

Miguel CARDONA, in his official capacity as the U.S. Secretary of Education, *et al.*,

                      *Defendants.*

Case No. 7:24-cv-533-GWB

## DECLARATION OF KATHY HEBDA, CHANCELLOR OF THE FLORIDA COLLEGE SYSTEM

1. I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, would competently testify to them.

2. I am the Chancellor of the Division of Florida Colleges within the Florida Department of Education (FDOE). I have been in this position since 2019, and I have been with FDOE since 1992.

3. As Chancellor, my responsibilities include the supervision of Florida's public colleges.[1] I have personal knowledge about Florida's relationship with the U.S. Department of Education (USED).

4. The Florida College System supports the education of approximately 600,000 college students attending our 28 public colleges.

5. All public colleges receive federal funds and are subject to the requirements of Title IX.

---

[1] Florida's colleges and universities are overseen by different entities. FDOE oversees the Florida College System, while Florida's State University System is overseen by the Florida Board of Governors.

6. Florida's 28 public colleges received over $1 billion in federal funding in 2022-2023. This money is a mix of financial aid to enrolled students and grants and contracts.

7. I understand that, on April 29, 2024, the USED published a new regulation under Title IX, titled *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*. That regulation, among other things, redefines "sex" to include gender identity and sexual orientation, broadens the definition of sexual harassment, and changes the grievance procedures under Title IX.

8. Unless a court steps in, this new rule will harm Florida, its colleges, and its students.

9. The rule conflicts with Florida laws that govern educational institutions. *See, e.g.*, Fla. Stat. Ann. §553.865 (bathrooms and changing facilities); Fla. Stat. Ann. §1006.71 (sex equality in intercollegiate athletics); Fla. Stat. Ann. §1006.205 (Fairness in Women's Sports); Fla. Stat. Ann. §1000.05(3) (discrimination in sports).

10. If any program or activity at one of Florida's public education institutions is determined not to comply with the requirements of Title IX, including bringing their policies in line with the applicable regulations, USED can terminate the institution's eligibility to receive federal financial aid.

11. Compliance with the new rule is burdensome and costly. The rule is over a thousand pages long; it will take substantial time and money to review the rule and existing policies, to determine what the rule requires, and to act to come into compliance with it.

12. USED agrees and has laid out this expectation for states. It estimates that the compliance costs will be "$4.6 million to $18.8 million over ten years." 89 Fed. Reg. at 33,851,

33,861. It "acknowledges" that "it will take some time to review requirements and revise policies and procedures to align with [the rule's] requirements." *Id.* at 33,851. States and institutions will incur significant costs in the form of "time," "reading and understanding the regulations; revising policies; publishing notices of nondiscrimination; training Title IX Coordinators; updating training materials;" "conduct[ing] additional training" and money to complete all of these tasks. *Id.* at 33,851, 33,548. USED also admits that recipients will see "an increase in Title IX complaints" they must administer, a "10 percent increase in the number of investigations" they must conduct, an "increase" in the "supportive measures" they must provide, and an "increase" in "responsiveness to all reports and complaints of sex discrimination." *Id.* at 33,483, 33,492, 33,850, 33,862, 33,868-69. These estimates are, in my view, overly conservative at best.

13.     Due to the expected increases in complaints, the rule also exposes Florida and its schools to increases in litigation costs and liability. Lawsuits are expensive, time-consuming, and distracting for institutions, institution officials, and the State. In fact, just the threat of liability, including large awards of attorney's fees, can be a devastating distraction from the colleges' mission of education and training.

14.     The rule puts schools in a catch-22. If they do not adopt USED's new definition of harassment, they risk enforcement actions by USED. However, if they do implement USED's rule, they risk these additional lawsuits from students who are disciplined under that new rule.

15.     The same is also true for the rule's redefinition of "sex discrimination" to include gender identity. The rule requires eliminating female-only spaces, even in sensitive

areas like bathrooms and locker rooms, which makes an unsafe environment for women and girls and violates Florida law, which was enacted specifically to protect their safety, privacy, and freedom from discrimination.

16. Florida has a substantial interest in ensuring that none of its female students are discriminated against by being forced to compete against men in athletics or share sensitive and private spaces with them. Florida is also harmed when our colleges are forced to spend public tax dollars on time and human resources trying to decipher and implement this overly broad regulation and on increased litigation, rather than dedicating those dollars as they are now to student safety and education.

Per 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May 8, 2024

*[signature]*
Kathy Hebda
Chancellor of the Florida College System