IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

State of ALABAMA, *et al.*,

                       Plaintiffs,

v.

Miguel CARDONA, in his official capacity
as the U.S. Secretary of Education, *et al.*,

                       Defendants.

Case No. 7:24-cv-533-GWB

## DECLARATION OF PAUL O. BURNS,
## CHANCELLOR OF FLORIDA'S PUBLIC SCHOOLS

1.    I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, would competently testify to them.

2.    I am the Chancellor of the Division of Public Schools within the Florida Department of Education (FDOE). I have been in this position since 2023, and I have been with FDOE since 2018, where I served as Deputy Chancellor for Educator Quality from 2018–2023.

3.    As Chancellor, among my many responsibilities, I oversee and implement a multitude of federal education grant programs for public K-12 schools. I have personal knowledge about Florida's relationship with the federal government, especially the U.S. Department of Education (USED).

4.    The Division of Public Schools supports the education of approximately 2.8 million K-12 students in Florida. The State has over 7,000 public K-12 schools, including over 3,500 public district schools and 3,500 charter schools.

1

5. The Division of Public Schools administers the distribution of various federal funds to public K-12 schools in Florida. All public K-12 schools receive federal funds and are subject to the requirements of Title IX.

6. Public K-12 education institutions received approximately $4 billion in federal funding in fiscal year 2023-2024.

7. I understand that, on April 29, 2024, USED published a new regulation under Title IX, titled *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*. That regulation, among other things, redefines "sex" to include gender identity and sexual orientation, broadens the definition of sexual harassment, and creates new enforcement procedures under Title IX.

8. Unless a court steps in, this new rule will harm Florida, its schools, its students, and their parents.

9. The rule conflicts with Florida laws that govern educational institutions. *See, e.g.*, Fla. Stat. Ann. §553.865 (bathrooms); Fla. Stat. Ann. §1014.01-06 (Parents' Bill of Rights); Fla. Stat. Ann. §1006.205 (sports); Fla. Stat. Ann. §1000.071(1)-(2) (names and pronouns); Fla. Stat. Ann. §1000.05(3) (discrimination in sports).

10. If any program or activity at one of Florida's public K-12 institutions is determined not to comply with the requirements of Title IX, including bringing their policies in line with the applicable regulations, USED can arbitrarily terminate federal funding to that program or activity.

11.     Compliance with the new rule is burdensome and costly. The rule is over a thousand pages long; it will take substantial time and money to review the rule and existing policies, to determine what the rule requires, and to act to come into compliance with it.

12.     USED agrees. It estimates that the compliance costs will be "$4.6 million to $18.8 million over ten years." 89 Fed. Reg. at 33,851, 33,861. It "acknowledges" that "it will take some time to review requirements and revise policies and procedures to align with [the rule's] requirements." *Id.* at 33,851. It will cost "time," and money "reading and understanding the regulations; revising policies; publishing notices of nondiscrimination; training Title IX Coordinators; updating training materials;" "conduct[ing] additional training"; and more. *Id.* at 33,851, 33,548. USED also admits that recipients will see "an increase in Title IX complaints" they must administer, a "10 percent increase in the number of investigations" they must conduct, an "increase" in the "supportive measures" they must provide, and an "increase" in "responsiveness to all reports and complaints of sex discrimination." *Id.* at 33,483, 33,492, 33,850, 33,862, 33,868-69. These estimates are, in my view, overly conservative at best.

13.     The rule also exposes Florida and its schools to litigation costs and liability. Lawsuits are expensive, time-consuming, and distracting for schools, school districts, school officials, and the State. In fact, just the threat of liability, including large awards of attorney's fees, can be devastating.

14.     The rule puts schools in a catch-22. If they do not adopt USED's new definition of harassment, they risk enforcement actions by USED. However, if they do implement USED's rule, they risk lawsuits from students who are disciplined under that new rule.

3

15. The same is also true for the rule's redefinition of "sex discrimination" to include gender identity. The rule requires eliminating female-only spaces, even in sensitive areas like bathrooms and locker rooms, which violates Florida law and makes an unsafe environment for girls.

16. Florida has a substantial interest in ensuring that none of its female students are discriminated against by being forced to compete against men in athletics or share sensitive and private spaces with them. Florida is also harmed when our public K-12 schools are forced to make impossible decisions about complying with this overly broad regulation or Florida's duly enacted laws.

Per 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May 8, 2024

Paul O. Burns, Ed. D.
Florida Chancellor of Public Schools