IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| State of ALABAMA, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>Miguel CARDONA, in his official capacity as the U.S. Secretary of Education, *et al.*,<br>*Defendants*. | Case No. 7:24-cv-533-GMB |

**DECLARATION OF MAY MAILMAN
(INDEPENDENT WOMEN'S LAW CENTER &
INDEPENDENT WOMEN'S NETWORK)**

1. I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, would competently testify to them.

2. I am the director of the Independent Women's Law Center and the senior legal advisor of the Independent Women's Network.

3. IWLC is a project of the Independent Women's Forum, a nonprofit, nonpartisan 501(c)(3) organization founded by women to foster education and debate on legal, social, and economic policy issues. IWLC supports this mission by advocating—in the courts, in Congress, and before administrative agencies—for freedom of expression, equal opportunity, and individual liberty, especially on matters of concern to women.

4. IWN is a project of Independent Women's Voice in partnership with Independent Women's Forum. IWN, a membership association of forward-thinking, patriotic women, provides members access to interesting articles, networking opportunities, and

1

resources to fight for the causes they're passionate about. It has chapters across the country, including in South Carolina and Florida.

5. IWLC and IWN have spent substantial time and resources defending the Trump administration's Title IX rule—the same 2020 rule that the Biden administration is now repealing. IWLC intervened in *Pennsylvania v. Devos* to defend the 2020 rule, *see* Minute Order, No. 1:20-cv-01468 (D.D.C. July 6, 2020), and the court upheld that rule as lawful, 480 F. Supp. 3d 47 (D.D.C. 2020). IWLC also helped defeat proposals to delay the 2020 rule's effective date. *See* IWLC & Speech First, *Letter to Secretary DeVos and Assistant Secretary Marcus* (Apr. 9, 2020), perma.cc/4ME3-43CS. And IWLC filed comments in response to the Department's notice of proposed rulemaking to repeal the 2020 rule here. *Comment Regarding Free Speech Concerns with Proposed Rule Redefining Unlawful Harassment under Title IX*, IWLC & IWF (Sept. 12, 2022), perma.cc/756B-UN6B; *Comment Regarding Lack of Due Process and Fundamental Fairness in Proposed Title IX Rule*, IWLC & IWF (Sept. 12, 2022), bit.ly/4dlfDvY; *Comment Regarding the Separation of Powers and Constitutional Violations in the Department of Education's Proposed Title IX Rule*, IWLC & IWF (Sept. 12, 2022), bit.ly/3Ux9ohf; *Comment Regarding Parental Rights Affected by Proposed Title IX Rule*, IWLC & IWF (Sept. 12, 2022), bit.ly/3Uw6WHu; *Comment Regarding Implications of the Department of Education's Proposed Title IX Rule*, IWLC & IWF (May 15, 2023), perma.cc/H54T-SHVN.

6. The new rule requires schools to let students use the bathroom and locker room that matches their gender identity, even when it does not align with their biological sex. According to the Department, the rule allows treating individuals differently based on gender

identity only in limited circumstances, and bathrooms and locker rooms are not one of those limited circumstances.

7. The new rule also will allow biological men who identify as women to compete in women's sports. The rule claims that sex-separate athletic teams can continue because the Department has a regulation that expressly allows it. 89 Fed. Reg. at 33,816. But the rule defines sex discrimination under Title IX to include discrimination based on gender identity and applies that new definition to circumstances where the Department's regulations expressly allow sex-separate facilities, like restrooms. It applies that new definition because it thinks the restroom regulation is *invalid* to the extent it requires all students to use the restroom that corresponds to their biological sex. 89 Fed. Reg. at 33,821. But the Department thinks the exact same thing about the regulation governing same-sex athletics. *See B.P.J. v. West Virginia*, No. 2:21-cv-316, ECF 42 (S.D. W. Va. June 17, 2021), perma.cc/ZV73-B4P6 (arguing that Title IX and the Constitution invalidate policies that "categorically exclude transgender girls from participating in single-sex sports restricted to girls"). The rule thus requires—or will predictably coerce—schools to allow biological males to compete on athletic teams for women or girls, denying IWN members and other female students equal athletic opportunities, playing time, and fair competition.

8. IWN has members who are current students at colleges and universities throughout the United States. Many of these members are current athletes for their colleges.

9. I am personally familiar with, and have spoken to, several of these members, including the members below. Based on those conversations and other materials I have personally seen, I have learned the following.

3

10. Regina Baird is a freshman at Ave Maria University in Florida. She competes for her college team in track and cross country, primarily running in the 800, 1500, and 5,000 meter races. Her school participates in the National Association of Intercollegiate Athletics. The NAIA currently does not allow biological males to participate in women's sports. *Transgender Participation Policy*, NAIA (Apr. 8, 2024), perma.cc/9UKW-JU42; Yurcaba, *NAIA Bans Transgender Women from Competing in Women's Sports*, NBC News (Apr. 9, 2024), perma.cc/Z8A7-F28F. Baird has participated in nearly a dozen NAIA meets in Florida.

11. Savvy Barbosa and Sarah Scott are freshmen at another university in Florida. Savvy plays goalkeeper and Sarah plays midfield on their school's women's lacrosse team. The team competes across the country. The 2024 season is ongoing with over a dozen games played so far, including in Florida, North Carolina, South Carolina, New York, Pennsylvania, and Indiana.

12. Mary Grace Tibbs is a freshman at Virginia Commonwealth University. She plays midfield on her college's women's lacrosse team. VCU's team competes across the country. The 2024 season is ongoing with over a dozen games played so far, including in Virginia, Pennsylvania, North Carolina, D.C., Massachusetts, and New York.

13. Haley Olive is a freshman at Webber International University in Florida. She plays for her college's lacrosse team. Webber's team participates in the NAIA, which again currently does not allow biological males to participate in women's sports. The 2024 season is ongoing with over a dozen games played so far, including in Florida, North Carolina, Kentucky, Missouri, and Georgia.

4

14. IWN's members support the scientific consensus that, like most mammals, human beings are born either male or female and that it is not possible to "become" male or female based on subjective feelings, cosmetics, style of dress, medication, or surgical procedures. They do not want to be forced to "affirm" that a man is really a "woman" just because he decides to identify or present as one.

15. IWN's members do not want to compete *against* biological males in their sports, as they believe that allowing males to compete in women's sports is unfair and unsafe.

16. Nor do they want to compete *with* biological males on their teams, as they or one or more of their female teammates would lose a roster spot, playing time, opportunities to compete, access to resources, and, in some cases, awards and potential scholarships. They believe that allowing males to take athletic opportunities, resources, and awards from female athletes is wrong and even discriminates against females in violation of Title IX.

17. IWN's members do not believe that biological males should be able to share traditionally female-only spaces with women, such as locker rooms and other sensitive spaces. The rule requires schools to adopt policies that let men use women's most sensitive spaces based on an asserted, presumably feminine, gender identity. These policies impinge on IWN's members' privacy interests in using locker rooms away from the opposite sex and in shielding their bodies from the opposite sex. Individuals have a privacy interest when their nude or partially nude bodies are exposed to others, especially when persons of the opposite sex are present. Allowing males into female-only spaces puts women's safety at risk and has the potential to harm them mentally, emotionally, and psychologically.

18. IWN's members do not want to share locker rooms or other sensitive spaces with biological males, and they do not consent to such practices. IWN's members believe that a school that forces female athletes to undress in front of naked male athletes without their consent has committed unlawful sexual harassment in violation of Title IX.

19. The challenged rule also will subject IWN's members to speech codes and disciplinary procedures on their campuses and in their leagues.

20. IWN's members want to be able to have open and robust intellectual debates and discussions about controversial issues—such as biological males participating in women's sports or using women's spaces because of their gender identity. And they want to be able to engage in discourse surrounding these topics on campus, in their community, and online. When a fellow athlete, classmate, or another member of the university community voices contrary views about these and other controversial topics, IWN's members want to point out the flaws in their arguments and convince them to change their minds. IWN's members want to speak directly to their classmates about these topics, and they want to talk frequently and repeatedly on these issues. Given their views, IWN's members know that many of these conversations will be heated, passionate, and targeted. But they want to have these conversations because they feel strongly about these issues.

21. If the rule challenged in this case becomes effective, however, IWN's members will limit their speech because they reasonably fear that their speech will be considered "harassment" or "misgendering" under the policies that the rule requires universities to adopt.

22. IWLC believes that all college students—most of whom are women—benefit from a fair and unbiased process for adjudicating claims of sex discrimination on campus. The challenged rule, however, is anything but fair or unbiased.

23. The challenged rule will divert IWLC's resources in ways that hinder its ability to accomplish its mission. Before the 2020 rule took effect, IWLC spent significant resources educating students on their due-process rights on campus and doing investigative reporting on kangaroo courts adjudicating sexual-harassment complaints. *See, e.g.*, *How to Talk About: Title IX, Sexual Assault, and Due Process on Campus*, IWF (2021), perma.cc/5MDU-LLQ7; Braceras, *Legal Policy Focus: Title IX, Sexual Misconduct, and Due Process on Campus*, IWF (Jan. 23, 2020), perma.cc/W2CM-H8YZ; Stepman, *Kangaroo Courts for Campus Sexual Assault Can't End Soon Enough*, IWF (Aug. 30, 2018), perma.cc/7NU4-ATD6. When the 2020 rule became effective, IWLC was able to spend its resources on other issues, such as defending women's sports, the First Amendment rights of college and K-12 students, and litigation defending the privacy rights of women. *See, e.g.*, *Westenbroek v. Kappa Kappa Gamma*, No. 2:23-cv-00051 (D. Wy.), *appeal filed*, No. 23-8065 (10th Cir.); *Levang v. Kappa Kappa Gamma*, No. 2:24-cv-00316 (S.D. Ohio); *Competition: Title IX, Male-Bodied Athletes, and the Threat to Women's Sports*, IWLC & IWF (2d ed. 2023), perma.cc/QRY2-P827. If the challenged rule becomes effective, IWLC will be forced to divert these resources back to assisting students and faculty who are accused under vague and subjective sexual-harassment policies without adequate procedural protections.

Per 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May 8, 2024

May Mailman
Independent Women's Law Center &
Independent Women's Network