

FILED

2024 Jun-19  AM 09:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

State of ALABAMA, *et al.*,

<em>Plaintiffs</em>,

v.

Miguel CARDONA, in his official
Capacity as U.S. Secretary of
Education, *et al.*,

<em>Defendants.</em>

No. 7:24-cv-533-ACA

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
## STAY OF EFFECTIVE DATE AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Table of Authorities ................................................................. iii

Introduction .............................................................................1

Argument..................................................................................2

    I.     Plaintiffs will likely succeed on the merits. ................................2

        A.     The rule illegally redefines "sex" discrimination. ...........................2

        B.     The rule illegally redefines "sex-based harassment."..................10

        C.     The rule illegally changes procedures. .........................................13

    II.    The other factors also favor Plaintiffs.........................................23

    III.   Plaintiffs' requested relief is normal and appropriate.............................25

Conclusion..............................................................................30

Certificate of Compliance .......................................................32

Certificate of Service..............................................................32

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*,
  585 U.S. 579 (2018)...................................................................................23

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) (en banc) .............................................2, 5

*Ark. Game & Fish Comm'n v. United States*,
  568 U.S. 23 (2012).....................................................................................19

*Ascendium Educ. Sols. v. Cardona*,
  78 F.4th 470 (D.C. Cir. 2023)..................................................................15

*Baltimore v. Azar*,
  439 F. Supp. 3d 591 (D. Md. 2020)....................................................29, 30

*Biden v. Nebraska*,
  143 S.Ct. 2355 (2023)................................................................................13

*Bidi Vapor LLC v. FDA*,
  47 F.4th 1191 (11th Cir. 2022) .................................................................22

*Bostock v. Clayton Cnty.*,
  590 U.S. 644 (2020)......................................................................................6

*BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*,
  229 F.3d 254 (3d Cir. 2000) ......................................................................24

*Brown v. Davenport*,
  596 U.S. 118 (2022)......................................................................................6

*Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*,
  100 F.4th 1349 (11th Cir. 2024) ...............................................................26

*Data Mktg. P'ship v. DOL*,
  45 F.4th 846 (5th Cir. 2022) ..............................................................12, 29

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999)......................................................................10, 11, 12

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019)....................................................................................16

*Doe v. Baum*,
  903 F.3d 575 (6th Cir. 2018) .....................................................................22

*Doe v. Univ. of Scis.*,
    961 F.3d 203 (3d Cir. 2020) ...............................................................17

*Eknes-Tucker v. Gov'r of Alabama*,
    80 F.4th 1205 (11th Cir. 2023) .......................................................2, 3

*FCC v. Fox Television Stations*,
    556 U.S. 502 (2009).............................................................................19

*Florida v. HHS*,
    19 F.4th 1271 (11th Cir. 2021) ..........................................................23

*Georgia v. President*,
    46 F.4th 1283 (11th Cir. 2022) .....................................................23, 27

*Green Rock v. IRS*,
    654 F. Supp. 3d 1249 (N.D. Ala. 2023).............................................27

*Griffin v. HM Fla.-ORL*,
    144 S.Ct. 1 (2023).................................................................................26

*Holloman ex rel. Holloman v. Harland*,
    370 F.3d 1252 (11th Cir. 2004) ..........................................................13

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005)................................................................................5

*Jones v. Tex. Dep't of Crim. Just.*,
    880 F.3d 756 (5th Cir. 2018) ..............................................................24

*Kentucky v. Yellen*,
    54 F.4th 325 (6th Cir. 2022) ...............................................................14

*L.W. ex rel. Williams v. Skrmetti*,
    83 F.4th 460 (6th Cir. 2023) .................................................................9

*Labrador v. Poe ex rel. Poe*,
    144 S.Ct. 921 (2024).............................................................................27

*Lane v. United States*,
    2018 WL 11441015 (S.D. Ga. Feb. 27).................................................2

*Louisiana v. Dep't of Educ.*,
    2024 WL 2978786 (W.D. La. June 13) ........................................passim

*Louisiana v. DOE*,
    90 F.4th 461 (5th Cir. 2024) ...........................................................9, 21

*Mass. v. EPA*,
    549 U.S. 497 (2007)..............................................................................18

*Mexican Gulf Fishing Co. v. Dep't of Com.*,
  60 F.4th 956 (5th Cir. 2023) ......................................................10, 13

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010)................................................................................27

*Mozilla Corp. v. FCC*,
  940 F.3d 1 (D.C. Cir. 2019) .................................................................15

*Muldrow v. St. Louis*,
  144 S.Ct. 967 (2024)................................................................................9

*Nasdaq Stock Mkt. LLC v. SEC*,
  38 F.4th 1126 (D.C. Cir. 2022) ............................................................29

*Nash v. Auburn Univ.*,
  812 F.2d 655 (11th Cir. 1987) .............................................................22

*NB ex rel. Peacock v. Dist. of Columbia*,
  682 F.3d 77 (D.C. Cir. 2012) ...............................................................17

*Nken v. Holder*,
  556 U.S. 418 (2009)................................................................................26

*North Carolina v. EPA*,
  531 F.3d 896 (D.C. Cir. 2008) .............................................................30

*NRDC v. EPA*,
  683 F.2d 752 (3d Cir. 1982) ................................................................28

*Otto v. Boca Raton*,
  981 F.3d 854 (11th Cir. 2020) .............................................................25

*Religious Sisters of Mercy v. Becerra*,
  55 F.4th 583 (8th Cir. 2022) ...............................................................17

*Sapuppo v. Allstate Floridian Ins.*,
  739 F.3d 678 (11th Cir. 2014) .............................................................29

*SFFA v. Harvard*,
  600 U.S. 181 (2023)................................................................................11

*Snipes v. Scott*,
  2019 WL 163352 (N.D. Fla. Jan. 10) .................................................24

*Speech First, Inc. v. Cartwright*,
  32 F.4th 1110 (11th Cir. 2022) .........................................1, 11, 12, 13

*State Nat. Bank of Big Spring v. Lew*,
  795 F.3d 48 (D.C. Cir. 2015) ...............................................................18

*Tennessee v. Cardona*,
    2024 WL 3019146 (E.D. Ky. June 17) ........................................................passim

*Tennessee v. Dep't of Educ.*,
    2024 WL 2984295 (6th Cir. June 14) ...............................................16, 18, 23, 25

*Texas v. Biden*,
    20 F.4th 928 (5th Cir. 2021) ........................................................................18, 19

*Texas v. Biden*,
    646 F. Supp. 3d 753 (N.D. Tex. 2022) ...............................................................26

*Texas v. Cardona*,
    2024 WL 2947022 (N.D. Tex. June 11) ....................................................passim

*Texas v. EEOC*,
    933 F.3d 433 (5th Cir. 2019) ..............................................................................14

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ..............................................................................29

*Texas v. United States*,
    2023 WL 5951196 (S.D. Tex. Sept. 13) .......................................................29, 30

*Texas v. United States*,
    50 F.4th 498 (5th Cir. 2022) ...............................................................................18

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) .......................................................................16, 18

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969)............................................................................................12

*United States v. Alabama*,
    443 F. App'x 411 (11th Cir. 2011) .....................................................................24

*W.V. ex rel. Morrisey v. Dep't of Treasury*,
    59 F.4th 1124 (11th Cir. 2023) ...........................................................15, 16, 23

*Watterson v. ATF*,
    2024 WL 897595 (E.D. Tex. Mar. 1) .................................................................27

**Statutes**

20 U.S.C. §1686 ......................................................................................................3, 4

5 U.S.C. §705 ................................................................................................2, 26, 28

**Other Authorities**

Gaiser, *The Truth of Erasure: Universal Remedies for Universal Agency Actions* (forthcoming Chi. L. Rev. Online 2024), perma.cc/J9YM-42QR .......................................................................26, 28

**Regulations**

34 C.F.R. §106.31 .......................................................................7

34 C.F.R. §106.33 .......................................................................7

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,*
    85 Fed. Reg. 30,026 (May 19, 2020) ..........................................20, 21

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,*
    89 Fed. Reg. 33,474 (Apr. 29, 2024) ..........................................passim

## INTRODUCTION

The administration's Title IX rule has been challenged by 26 States (and is enjoined in ten, so far). *Tennessee v. Cardona* (*TN Rule*), 2024 WL 3019146 (E.D. Ky. June 17); *Louisiana v. Dep't of Educ.*, 2024 WL 2978786 (W.D. La. June 13). That level of resistance shouldn't be surprising, since unelected bureaucrats tried to reinvent a landmark statute to impose their deeply unpopular views on the entire country. Nor is it terribly surprising that the agency's lawyers, faced with all this litigation, drafted a generic brief that defends the rule only at a high level.

But a cookie-cutter defense won't work in *this* circuit. As this Court already flagged, Eleventh Circuit precedent is "adverse" to the Department's rule. Text Order (June 10, 2024). The Department's opposition never admits that *Adams* makes the rule's bathroom provision dead on arrival. And *Adams*' reasoning dooms the rule's importation of *Bostock* more broadly. Other binding precedents, like *Cartwright*, hold that the rule's definition of harassment raises grave First Amendment concerns. And though the rule's procedural changes aren't immediately doomed by circuit precedent, that's about all that can be said for them.

This Court will likely vacate the rule. Instead of letting it irreparably harm States and students in the meantime, this Court should stay its effective date—or at least preliminary enjoin its enforcement in the Plaintiff States—by August 1.

## ARGUMENT

Though the Department mentions the standard for preliminary injunctions, it never mentions the standard for stays under 5 U.S.C. §705. It must agree, then, that the two standards turn on the same factors. Mot. (Doc. 7-1) at 11. If anything, the standard for a stay is lower. *See Lane v. United States*, 2018 WL 11441015, at *2 (S.D. Ga. Feb. 27). But under either one, Plaintiffs are entitled to interim relief.

## I.   Plaintiffs will likely succeed on the merits.

### A.   The rule illegally redefines "sex" discrimination.

#### 1.   Contrary to law

*Adams & Eknes-Tucker*: In the rule, the Department expressly "decline[d] to adopt the Eleventh Circuit's reasoning in *Adams*." 89 Fed. Reg. at 33,819-21. In its opposition one month later, the Department seems to have amnesia, never acknowledging its prior concession or Plaintiffs' argument that *Adams* forecloses the rule. All the Department will say is that "[n]othing in *Adams* contradicts" the rule's "clarification" that "discrimination based on gender identity necessarily constitutes" sex discrimination. Opp. (Doc. 24) at 10. Even that tepid response is wrong.

*Adams* rejects importing *Bostock* into Title IX. Hence why the Department quotes the section of *Adams* discussing the Equal Protection Clause, not Title IX. *See* Opp.10 (citing 57 F.4th 791, 808-09 (11th Cir. 2022) (en banc)). Nothing in Title IX's text, history, or purpose supports redefining sex discrimination to include "gender identity." Mot.11-14. Three courts who are not bound by *Adams* recently agreed.

2

*See TN Rule*, 2024 WL 3019146, at *8-13; *Louisiana*, 2024 WL 2978786, at *10-12; *Texas v. Cardona*, 2024 WL 2947022, at *28-35 (N.D. Tex. June 11). This Court, which is bound, should too.

The Department's treatment of *Eknes-Tucker* is just as weak. It says that case distinguished *Bostock* only because the Equal Protection Clause does "not contain the same language as Title VII." Opp.11. *Eknes-Tucker* said something far broader: *Bostock* "bears minimal relevance" to cases involving "a different law … and a different factual context." 80 F.4th 1205, 1228-29 (11th Cir. 2023). Title IX is a different law governing a different factual context. Title IX involves the unique context of "educational opportunities," while "Title VII focuses exclusively on hiring and firing in employment." *Texas*, 2024 WL 2947022, at *37. "Title IX *only* covers sex," while "Title VII … treats sex the same as race, national origin, and other protected classifications." *Id.* And Title IX has express carveouts that *Bostock* would "directly conflic[t]" with. *Id.*; *accord Louisiana*, 2024 WL 2978786, at *12; *TN Rule*, 2024 WL 3019146, at *12-13.

The rule acknowledges that, for it to be right, *Adams* has to be wrong. It explains that *Adams* "determined … that restrooms are covered by … §1686," that the new rule is "contrary to the reasoning in *Adams*," that it "does not agree" with *Adams*' "interpretation of Title IX," and that it "declines to adopt the Eleventh Circuit's reasoning in *Adams* that the statutory carve out for living facilities governs." 89 Fed.

Reg. at 33,820-21. That frankness prompted this Court to asks the parties for supplemental briefing on whether an agency can "consider" and "reject" a "circuit court decision" that "is adverse to its proposed rule." Doc. 27.

But in its supplemental brief, the Department tries a brand-new theory, arguing for the first time that *Adams* does not foreclose the agency's rule under *Chevron* and *Brand X* because Title IX is ambiguous. Defts.-Supp.Br. (Doc. 35). A supplemental brief is a little late to be invoking *Chevron* deference, even if that doctrine survives past June. *See* Pltfs.-Supp.Br. (Doc. 34). Regardless, *Adams* interprets Title IX and its carveout for sex-separated "living facilities"—and does so in a section, aptly titled, "The Statute is Not Ambiguous." 57 F.4th at 812-15. Citing §1686, *Adams* explains that "Title IX … expressly allow[s] … separate bathrooms." *Id.* at 814. And after interpreting the statute, *Adams* holds that "Title IX … *expressly* permits separating the sexes when it comes to bathrooms *and other living facilities*." *Id.* at 815 (emphases added). Even if the Department were right that Title IX is ambiguous, it would still lose under *Adams*' reasoning about the Spending Clause and its clear-statement principle. *See id.* at 815-17.

**Spending Clause**: The Department concedes that only "a *statute*" can provide the clear statement needed under the Spending Clause; regulations cannot. Opp.48-49. So the Department is left arguing that Title IX is clear enough to compel all the rule's innovations. This argument contradicts *Adams*, which held that Congress

4

didn't provide a clear statement in Title IX "equating 'sex' to 'gender identity' or 'transgender status.'" 57 F.4th at 816. Three courts now agree. *See TN Rule*, 2024 WL 3019146, at \*14-15; *Louisiana*, 2024 WL 2978786, at \*16; *Texas*, 2024 WL 2947022, at \*41 & n.135.

*Jackson v. Birmingham Board of Education* does not help the Department. Opp.51-52 (citing 544 U.S. 167, 175 (2005)). *Jackson* holds that Title IX covers "retaliation" because Congress enacted Title IX against the backdrop of a Supreme Court opinion "interpret[ing] a general prohibition on racial discrimination to cover retaliation" and because a contrary reading would severely undermine Title IX's "objective[s]." 544 U.S. at 175-76, 179-80. Neither condition holds here. *Bostock* was decided nearly five decades *after* Title IX's enactment, and the Department's reading is the one that would upend Title IX's objectives. Unlike in *Jackson*, the Department seeks to reimagine "sex discrimination" to cover a form of discrimination that clashes with "Title IX's statutory structure" and its longstanding "regulatory scheme." *Adams*, 57 F.4th at 816. Regardless, *Jackson* at most discusses "the *category* of discrimination that falls under the statute." *TN Rule*, 2024 WL 3019146, at \*15. "Neither *Jackson* nor any of the cases" the Department "cites indicates the statute should be read to expand the traditional definition of 'on the basis of sex.'" *Id.*

**Major Questions**: The Department says the major-questions doctrine cannot apply here because the Supreme Court didn't apply it in *Bostock*, Opp.52-53, but that reasoning falls short. *Bostock* didn't involve any agency action, and the doctrine wasn't raised there. Supreme Court precedents don't silently resolve questions that were never implicated, briefed, or discussed. *Brown v. Davenport*, 596 U.S. 118, 141 (2022). The Department doesn't deny that Title IX's application to gender identity *is* a major question. Three courts now agree. *See Texas*, 2024 WL 2947022, at *35-49; *TN Rule*, 2024 WL 3019146, at *14; *Louisiana*, 2024 WL 2978786, at *13-15.

Both the major-questions doctrine and the Spending Clause require a clear statement, and that clear statement is not provided by *Bostock*. The Department's insistence otherwise flouts *Adams*. *See* 57 F.4th at 815-17. It also flouts *Bostock*, which disavowed "prejudg[ing]" its application to other "laws that prohibit sex discrimination," as well as "bathrooms" and "locker rooms." 590 U.S. 644, 681 (2020). And it ignores the circuit split over *Bostock*'s application to Title IX. Mot.13-15; *see Texas*, 2024 WL 2947022, at *37; *Louisiana*, 2024 WL 2978786, at *10-11.

Far from clearly mandated, letting males use female restrooms violates Title IX. That policy, as a court recently explained, would "constitute the very type of sex discrimination that Title IX prohibits by privileging transgender persons with the ability to abide by their biological sex or not." *Texas*, 2024 WL 2947022, at *38;

*accord Louisiana*, 2024 WL 2978786, at *12, *19; *TN Rule*, 2024 WL 3019146, at *36. Or as *Adams* put it: "Reading 'sex' to include 'gender identity' … would provide more protection against discrimination on the basis of transgender status … than it would against discrimination on the basis of sex," which "cannot comport with" Title IX's original public meaning. 57 F.4th at 814.

### 2. Arbitrary and capricious

**Bathrooms**: The rule's de minimis harm regulation (§106.31(a)(2)) conflicts with the preexisting bathroom regulation (§106.33), while arbitrarily refusing to repeal or amend it. Mot.19-20. The Department denies this conflict, insisting that recipients can have sex-separated bathroom policies so long as they don't enforce them against transgender-identifying students. Opp.19. But that's just another way of saying that §106.33 is partially invalid. The agency can't justify its unreasonable handling of this problem by unreasonably denying its existence. *See TN Rule*, 2024 WL 3019146, at *34 (Department inadequately explained the "obvious tension between longstanding regulations [on bathrooms] and the Final Rule").

**Sports**: The Department's disparate treatment of bathrooms and sports is arbitrary too. Mot.20-21. The Department concedes that bathrooms and athletics were originally part of the same batch of regulations. Opp.22. And though the Department says its treatment of athletics is longstanding, Opp.22, its bathroom regulation is "equally 'longstanding,'" *TN Rule*, 2024 WL 3019146, at *34. Bathrooms and sports

are inextricably intertwined; the Department can't save this important aspect of the problem for later. *See id.*

**Gender Identity**: The Department never denies that "gender identity" can describe "a huge variety" of identities, or that persons can be "more than one gender identity." Mot.21-22. Nor does the Department explain how recipients can "verify" a person's "gender identity" without falling into absurdity. Mot.22-23. The Department's failure to define this key term or to provide any real guidance about obvious problems "is arbitrary and capricious." *Louisiana*, 2024 WL 2978786, at \*17; *accord TN Rule*, 2024 WL 3019146, at \*24, \*33-34 (same).

**Reliance**: On reliance, the Department repeats the rule's error by insisting that "nothing … requires recipients to construct new facilities or create new programs." Opp.24. By "allowing biological men … into locker rooms, showers, and bathrooms" currently reserved for women, the rule "risk[s] invasion of privacy, embarrassment, and sexual assault." *Louisiana*, 2024 WL 2978786, at \*19. So if it becomes effective, recipients must take precautions; and because existing facilities were built around biology, those precautions will be costly. The Department never reasonably considered these reliance interests or less disruptive alternatives. Mot.23-25. It merely declared, "with no explanation," that males in female spaces "do not pose a safety risk," *Louisiana*, 2024 WL 2978786, \*18-19, even though commentators provided "significant evidence" on "the safety and privacy interests at stake," *TN Rule*,

2024 WL 3019146, at \*35. Such "conclusory statements" are not good enough under the APA. *Louisiana v. DOE*, 90 F.4th 461, 473 (5th Cir. 2024). Especially because the rule's no-questions-asked regime invites these problems by prohibiting recipients from verifying "gender identity." *Louisiana*, 2024 WL 2978786, at \*19. Instead of reasonably addressing the problems it created, the Department "effectively ignored" these valid "concerns." *TN Rule*, 2024 WL 3019146, at \*36.

**De Minimis**: The Department says its de minimis standard tracks *Muldrow v. St. Louis*. Opp.15-16 (citing 144 S.Ct. 967 (2024)). Doubtful, since the rule doesn't address *Muldrow* at all. So the Department's current explanations are post hoc rationalizations. *DOE*, 90 F.4th at 469. The de minimis standard is also lawless. It impermissibly equates "[r]ecognizing and respecting biological sex differences" to discrimination. *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 486 (6th Cir. 2023); *accord Texas*, 2024 WL 2947022, at \*31. And it doesn't even make sense under *Bostock*, given that decision's comparator inquiry. Mot.15.

**Parental Rights**: The Department claims it doesn't jeopardize parental rights because one clause promises that the rule will not "be read in derogation of any legal right of a parent." Opp.27-28. But this no-derogation clause cannot be squared with the Department's other, more specific statements that do jeopardize parental rights. For example, the Department doesn't dispute that the rule requires schools to adopt a student's gender identity over a parent's opposition. 89 Fed. Reg. at 33,821-22.

Ignoring these clear clashes was not reasonable. *See TN Rule*, 2024 WL 3019146, at

\*30-31 (Department's consideration of parental rights was arbitrary and capricious).

### B.     The rule illegally redefines "sex-based harassment."

*Davis***:** The rule's rejection of the *Davis* standard is both contrary to law and

arbitrary and capricious. The Department no longer denies that its definition of har-

assment differs materially from *Davis*'. The Department instead claims that "Plain-

tiffs fail to explain why the *Davis* standard must apply in" the administrative-en-

forcement context, as opposed to private lawsuits. Opp.30. Except Plaintiffs did.

Mot.27-29.

As explained, *Davis* rejects the very standard that the rule requires, adopting

a more stringent definition that honors the line between punishable conduct and pro-

tected speech. Mot.27-28. *Davis* holds that sexual harassment under Title IX must

be "so severe, pervasive, *and* objectively offensive that it *denies* its victims the equal

access to education." 526 U.S. 629, 652 (1999) (emphases added). Because this

standard was adopted to avoid "grave constitutional concerns," *Mexican Gulf Fish-*

*ing Co. v. Dep't of Com.*, 60 F.4th 956, 966 (5th Cir. 2023), the Department has no

power to reject it, Mot.27-30. Its contrary approach would give the same words two

different meanings, Mot.31—an aberration that the Department doesn't deny or jus-

tify, either now or in the rulemaking. As a district court recently agreed: "The 'har-

assment standard' created by the Final Rule is obviously contrary to Title IX, and

[there are] compelling arguments for how it can violate the free speech right of the First Amendment." *Louisiana*, 2024 WL 2978786, at *13.

The Department says *Davis* somehow ratified its approach by "repeatedly and approvingly cit[ing] the Department's then-recently published guidance," which used the severe-*or*-pervasive standard. Opp.30. But the Department "wrenches" stray citations "from [their] context" while "going to lengths to ignore the parts of [*Davis*] it does not like." *SFFA v. Harvard*, 600 U.S. 181, 229 (2023). *Davis* does not "repeatedly" cite the guidance. It cites it twice for two irrelevant points: that Title IX covers "student-on-student harassment," and that "the ages of the harasser and the victim and the number of individuals involved" are relevant. 526 U.S. at 647-48, 651. The Court repeated the severe-*and*-pervasive standard, by contrast, five times. And it took seriously the First Amendment concerns that would result from a lower standard. Mot.27-29. The First Amendment, of course, does not apply any differently to the executive branch in enforcement proceedings than it does to the judicial branch in private lawsuits.

***Cartwright***: The Department says Plaintiffs "provide no basis" to think that the rule "is in tension with" the Eleventh Circuit's decision in *Cartwright*. Opp.33. Except Plaintiffs carefully explained how the rule's definition of harassment is materially identical to the policy deemed unconstitutional in *Cartwright*. Both "reac[h] pure speech," restrict "speech at the heart of the First Amendment," use a "gestaltish

totality of known circumstances approach," use "amorphous" terms, are "viewpoint discriminatory," and more. Mot.29-30, 34-35 (cleaned up). If anything, the Department's definition, as interpreted in the rule, is worse. Mot.29-30, 33-36; *see TN Rule*, 2024 WL 3019146, at \*20-27. The Department does not respond to these arguments because it has no response. At a minimum, *Cartwright* proves that *Davis* was right to be concerned about harassment policies triggering First Amendment concerns. Because the rule now forces all schools to take on this constitutional liability—without reason or recognition—the Department acted arbitrarily.

    *Rowles*: The Department now agrees that *Rowles* did not involve an average student; and unlike the rule itself, its brief never claims that *Rowles* justifies a departure from *Davis*. Rather than surrender, the Department tries to rehabilitate its reliance on *Rowles* with new arguments. Opp.34-36. But "these *post hoc* rationalizations confirm that the action here is arbitrary and capricious." *Data Mktg. P'ship v. DOL*, 45 F.4th 846, 858 (5th Cir. 2022). And the new reasons are just as defective as the old ones. Relying on *Tinker*, the Department says the speech of public-school students, like the speech of employees, is "more regulated than that of the general public." Opp.35 (citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969)). But *Cartwright* rejects the notion that *undergraduate* students have diminished First Amendment rights. 32 F.4th at 1127 n.6. And it rejects the notion that

*any* student can be subjected to viewpoint discrimination. *Id.*; *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1280 (11th Cir. 2004). Regardless, the Department misses Plaintiffs' point. What's fatal under the APA is that the Department subjected schools to constitutional liability, used inapplicable cases to deny that it had done so, and then didn't recognize the inapplicability of its cases. Mot.32-33.

**Misgendering**: In a lone paragraph, the Department says the rule's treatment of "misgendering" was adequate. As a reminder, the rule says this question is "fact-specific," that a "stray remark" wouldn't count, but that "misgendering can be" illegal. Opp.36-37. If that is reasoned decisionmaking, then it's hard to see what wouldn't be. The constitutional buzzsaw that the Department is running schools into is obvious: As a court recently highlighted, "forcing schools" to regulate students' "use of preferred pronouns" raises serious constitutional concerns by intruding on "protected forms of expression and religious exercise." *Texas*, 2024 WL 2947022, at *28 n.119; *accord TN Rule*, 2024 WL 3019146, at *23. Yet the Department gives no answers to the constitutional crisis it created. *See Mexican Gulf*, 60 F.4th at 973 (constitutional concern was a "significant issu[e]" that the agency must adequately address).

### C.     The rule illegally changes procedures.

#### 1.     Article III standing

Only one plaintiff needs standing, *Biden v. Nebraska*, 143 S.Ct. 2355, 2365 (2023), which requires injury, causation, and redressability, *Cartwright*, 32 F.4th at

1119. At this preliminary stage, "general factual allegations of injury" suffice, *id.* (cleaned up), though Plaintiffs submitted evidence that is specific and substantial—and that the Department never contests, *see* Docs. 7-2–13, 15. The Plaintiff States are also the rule's object. *See Texas*, 2024 WL 2947022, at *11-19. So causation and redressability should be "'little question.'" *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019).

The Department concedes that Plaintiffs have standing to challenge its re-definitions of sex discrimination and sexual harassment, but it denies that Plaintiffs can challenge its new grievance procedures. The rule merely *allows* schools to choose the new procedures, the Department says, so any harm to Plaintiffs from the adoption of those procedures is caused by the "independent action" of "third part[ies]." Opp.39. (This argument goes to causation, not redressability, since vacating the rule would obviously stop the bad procedures by forcing all schools to comply with the 2020 rule.)

Even crediting the Department's reasoning, Plaintiffs still have standing. The Department never denies that *the rule* injures Plaintiffs. Increased "compliance costs" and "regulatory burden" are injuries. *Kentucky v. Yellen*, 54 F.4th 325, 342 (6th Cir. 2022); *Texas v. EEOC*, 933 F.3d at 446. And all agree that the rule imposes those costs via policy reviews; policy revisions; trainings; litigation; and increases in Title IX complaints, investigations, and enforcement. 89 Fed. Reg. at 33,851-52,

33,876, 33,483, 33,868-69; *see Louisiana*, 2024 WL 2978786, at *18. Because Plaintiffs are injured by the rule's "promulgation," they have "standing to challenge essential components of that rule," even if those components "are not directly linked to [Plaintiffs'] injuries." *Mozilla Corp. v. FCC*, 940 F.3d 1, 46-47 (D.C. Cir. 2019). According to Plaintiffs, the new procedures are a reason to vacate the entire rule; and for purposes of standing, this Court must "assume" that Plaintiffs are correct. *W.V. ex rel. Morrisey v. Dep't of Treasury*, 59 F.4th 1124, 1137 (11th Cir. 2023). So Plaintiffs don't need independent standing to challenge each part of the rule. *See Ascendium Educ. Sols. v. Cardona*, 78 F.4th 470, 478 (D.C. Cir. 2023) ("Ascendium alleges that the rule is unlawful in its entirety … because it is arbitrary and capricious…. Ascendium thus has standing to bring any claims that could lead to the Rule's vacatur.").

But the Department's reasoning is faulty on its own terms. For starters, some of the rule's procedural changes are *not* optional. The rule requires schools to adopt the preponderance standard, unless they adopt the clear-and-convincing standard for all "comparable" proceedings. 89 Fed. Reg. at 33,893. This provision will require at least some schools in the Plaintiff States to change their procedures on August 1. *See id.* at 33,840-41; *e.g.*, Exs. A-B. The rule also requires schools to accept oral complaints, 89 Fed. Reg. at 33,882, predictably ballooning the number they must receive

and address, *id.* at 33,483, 33,868-69, 33,882. Plaintiffs unquestionably have standing to challenge these coerced changes. *See Tennessee v. Dep't of Educ.* (*TN Guidance*), 2024 WL 2984295, at *6 (6th Cir. June 14); *Morrisey*, 59 F.4th at 1137-38; *Texas*, 2024 WL 2947022, at *13-14.

Even for the supposedly optional changes, the notion that schools will adopt them is "predictable," not "mere speculation." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019); *see Texas v. United States* (*DAPA*), 809 F.3d 134, 159-60 (5th Cir. 2015) (Article III can be satisfied even if "the independent act of a third party was a necessary condition of the harm's occurrence, and it was uncertain whether the third party would take the required step"). These procedures will then harm Plaintiffs by discriminating against their students, denying them due process, harming their ability to get an education and contribute to the State, and more. *E.g.*, Mackey Decl. ¶¶8, 16-17; Sikes Decl. ¶¶7, 13-15; Brickhouse Decl. ¶¶13-14; Purcell Decl. ¶19; Hebda Decl. ¶¶8, 14-16; Burns Decl. ¶¶8, 14-16; Woods Decl. ¶¶8, 17-20; Hardee Decl. ¶¶8, 15, 18; Weaver Decl. ¶¶9, 14, 19; Keel Decl. ¶¶8, 17; Trump Decl. (Doc. 7-13) ¶¶20-22; Neily Decl. (Doc. 7-12) ¶27. And while the Plaintiff States can control the procedures in their public schools, they cannot control schools in other States or even private schools within their States—all places where their students attend. *E.g.*, Mackey Decl. ¶17; Woods Decl. ¶20. The injuries to those students impose quasi-

sovereign injuries that the Plaintiff States can vindicate here. *See TN Rule*, 2024 WL 3019146, at *28-29; *Texas*, 2024 WL 2947022, at *11.

Many schools will adopt these bad procedures because they want to (and can, once this rule repeals the 2020 rule). The schools either "agree with them as a matter of policy," Trump Decl. ¶21, or find them less burdensome. The Department's state amici, for example, wrote in favor of these procedural changes and now want to adopt them. *See* Amici-Br. (Doc. 30-1) at 15-17. And "research shows that when not required to provide a live hearing," for example, "the majority of institutions, regardless of their size, do not." Ex. C at 61 (citing Ex. D at 79).

Many other schools will adopt these procedures out of fear. The Department has gone after schools for not adopting them. *E.g.*, Keel Decl. ¶17; Hebda Decl. ¶14; *see Doe v. Univ. of Scis.*, 961 F.3d 203, 213 & n.6 (3d Cir. 2020). Schools know that past is prologue, *NB ex rel. Peacock v. Dist. of Columbia*, 682 F.3d 77, 84 (D.C. Cir. 2012), especially since the Department has not "disavow[ed]" enforcement against schools who keep the 2020 procedures, *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 605 (8th Cir. 2022) (cleaned up). In fact, the rule requires all schools to "monitor for barriers to reporting"—meaning they must constantly assess whether their current procedures are deterring complaints, 89 Fed. Reg. at 33,853—on the threat of investigations or enforcement actions by the Department, *id.* at 33,636-37. Even for schools that reject the new procedures, this "monitoring program" itself

imposes "costs" that are sufficient for standing. *State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) (Kavanaugh, J.); *see Texas v. Biden* (*MPP*), 20 F.4th 928, 975 (5th Cir. 2021) ("[F]or standing purposes, a loss of even a small amount of money is ordinarily an injury."). As does the rule's coercive effect. *TN Guidance*, 2024 WL 2984295, at *20.

Any doubts that the Court has at this stage should be resolved in Plaintiffs' favor. Plaintiffs have the *only* evidence in the record about what schools will likely do, and the Department never tries to rebut or disprove any of it. Further, the Plaintiff States are entitled to "special solicitude" in the standing analysis. *Mass. v. EPA*, 549 U.S. 497, 520 (2007). Special solicitude applies here because the States "challeng[e] an agency action as invalid," *MPP*, 20 F.4th at 969; and the rule "regulate[s] matters [the States] believe they control": education, *DAPA*, 809 F.3d at 153; *see TN Guidance*, 2024 WL 2984295, at *7-11; *Texas*, 2024 WL 2947022, at *12-13. So the Plaintiff States needn't "mee[t] all the normal standards" for redressability, causation, or immediacy. *Texas v. United States* (*DACA*), 50 F.4th 498, 514, 519 (5th Cir. 2022).

## 2.    Arbitrary and capricious

**Live Hearing & Cross-examination**: The Department previously found that indirect questioning severely undermines a grievance procedure's reliability and

truth-seeking function. Mot.37-40. Instead of denying that previous finding, the Department says it "adequately explained its" change when it "considered factors" like flexibility and cost. Opp.41. But the rule doesn't reasonably explain the relevant factors or the Department's balancing of them. "Stating that a factor was considered is not a substitute for considering it." *MPP*, 20 F.4th at 993 (cleaned up). Nor is it a substitute for the "detailed justification" that is required for "findings that contradict" the ones underlying the 2020 rule. *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009).

Though the Department says *Fox* doesn't require it to "'provide a more detailed justification,'" Opp.40-42, the Department violates "the first rule of case law": "Read on." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012). As the *Fox* Court went on to explain: "Sometimes [the agency] must" provide a "more detailed" explanation—"when, for example, its new policy rests upon factual findings that contradict those which underlay its prior policy." 556 U.S. at 515. So it is here. Mot.39-42.

The Department's insistence that the rule doesn't "preclud[e]" using "a live hearing with questioning by an advisor" is insincere. Opp.40. The Department's amici—which apparently prompted this part of the rule—disagree. *See* Amici-Br.16 (calling "mandatory live hearings with adversarial cross-examination … irreconcil-

able with Title IX[]"). Regardless, the Department doesn't explain why these protections should be *optional* given its key finding in 2020: that adversarial cross-examination is *necessary* in the sexual-misconduct context because these allegations invariably "turn on party credibility" and involve "high stakes." 85 Fed. Reg. at 30,328-30.

**Single Investigator**: The Department also previously found that the single-investigator model—where the same decisionmaker is judge, jury, and executioner—raises grave due-process concerns. Mot.40-42. Instead of denying this prior finding, the Department says it decided that "some recipients" should have this option to reduce their "burdens." Opp.42-43. But the Department handed *all* recipients this loaded gun. And all unfair procedures impose fewer "burdens" on the decisionmaker. The question is whether these decreased burdens justify the massive risks to the accused, who stands to lose everything. The Department's casual reasoning on these issues is insufficient, especially given its prior findings.

**Notice & Access to Evidence**: The Department fails to engage with Plaintiffs' arguments on notice and access to evidence. Plaintiffs explained why the Department didn't reasonably consider less disruptive alternatives, like providing the parties access to evidence and allegations without forcing them to ask. Mot.42-44. The Department never explains why that alternative would not "streamline the investi-

gation." Opp.44. Plaintiffs also explained why the Department didn't reasonably explain why the broader scope of evidence available under the 2020 rule is problematic. Mot.42-43. The Department again doesn't respond, let alone cite where in the rule it provided a reasonable explanation. Opp.43-44. These omissions are fatal. *See DOE*, 90 F.4th at 476.

That notices of investigation must be in writing does not make it okay for complaints to be oral (or for there to be no complaint at all). *Contra* Opp.44. If the complaints are unreliable, then the written notice that stems from those complaints will be unreliable too. And contra the Department, Opp.44-45, the 2020 rule requires formal complaints now. That rule requires deliberate indifference; so when schools have actual knowledge of sexual misconduct, they can respond with "supportive measures" while explaining the accuser's right to "file a formal complaint." *See* 85 Fed. Reg. at 30,115, 30,130-31. But schools can't investigate or initiate grievance proceedings without a formal complaint. *See id.* The new rule dramatically changes this regime.

**Burden of Proof**: The Department says the clear-and-convincing standard is still available, Opp.45-46, but the rule, without reasonable explanation, significantly discourages a recipient from adopting it, Mot.44. And it speaks in the vaguest terms. The Department says the phrase "comparable proceeding" is clear and "extensively discussed in the Rule." Opp.45-46. But it's not, which is why the Department cannot

point to anything but a single sentence that says little more than it "'depend[s].'" Opp.46. And contra the Department, Opp.46-47, some schools within Plaintiff States do use the clear-and-convincing standard now, *e.g.*, Exs. A-B.

**Cumulative Effect**: The Department agrees that it had to consider the cumulative effect of its procedural changes, but it says it "explicitly" did. Opp.48. But in the "fifteen pages" the Department cites, there are not even fifteen words—and certainly not a reasonable explanation—addressing cumulative effect. Opp.48 (citing 89 Fed. Reg. at 33,633-48). In that page range, the Department doesn't explain how the combination of a single-investigator model and no cross-examination does not exacerbate the due-process concerns. Nor does it explain how the changes to the burden of proof, notice, and access to evidence together affect the reliability of proceedings, especially after adding the single-investigator model. The Department's omissions render its procedural changes arbitrary and capricious. *Bidi Vapor LLC v. FDA*, 47 F.4th 1191, 1203 (11th Cir. 2022).

**Nash**: Finally, the Department claims that, unlike other circuits, the "Eleventh Circuit" in *Nash v. Auburn University* largely rejected any due-process concerns in this context. Opp.47 (citing 812 F.2d 655 (11th Cir. 1987)). *Nash* is crucially different. That case involved "academic dishonesty" of a graduate student and had nothing to do with sexual misconduct. 812 F.2d at 657. Unlike academic dishonesty, sexual-misconduct cases are "he-said-she-said" and risk life-altering stigma. Mot.37-42;

*see, e.g., Doe v. Baum*, 903 F.3d 575, 582 (6th Cir. 2018) ("Being labeled a sex offender by a university has both an immediate and lasting impact on a student's life."). The Department is simply continuing to ignore relevant distinctions.

## II.   The other factors also favor Plaintiffs.

**Irreparable Harm**: If the rule goes into effect, it will preempt the States' laws, inflict massive compliance costs on schools, and violate students' rights. Mot.46-47. The Department cannot deny these harms or make them reparable.

The Department concedes that "the Rule … conflicts with Plaintiff-States' laws and policies." Opp.53. The "inability to enforce … duly enacted [policies] inflicts irreparable harm." *Abbott v. Perez*, 585 U.S. 579, 603 n.17 (2018). So does "pressure to change [state] laws." *TN Guidance*, 2024 WL 2984295, at *25; *accord TN Rule*, 2024 WL 3019146, at *41-42. While a State suffers no per se irreparable harm when its law is preempted by a rule that "the [agency] had the authority to issue," *Florida v. HHS*, 19 F.4th 1271, 1292 (11th Cir. 2021), the Department *lacks* "authority to issue the … rule" here, *id.* An *illegal* rule that conflicts with state policy irreparably harms the States' "sovereign authority." *Morrisey*, 59 F.4th at 1149.

The Department also concedes that "unrecoverable monetary loss is an irreparable harm." *Georgia v. President*, 46 F.4th 1283, 1302 (11th Cir. 2022); *see* Opp.54. It further agrees that compliance here will "'take time and money,'" and that those costs are unrecoverable because the federal government enjoys sovereign

immunity. Opp.54. Though it thinks these harms are "routine," Opp.54, the Eleventh Circuit has already rejected the notion that "ordinary compliance costs are typically insufficient to render harm irreparable," *Georgia*, 46 F.4th at 1302 (cleaned up); *accord Louisiana*, 2024 WL 2978786, at *19; *TN Rule*, 2024 WL 3019146, at *38-39. In short, the "'time and effort'" it will take to comply with this rule create harms that are easily "irreparable." *Georgia*, 46 F.4th at 1302.

The Department also never denies that violations of students' right to privacy, free speech, due process, and the like are irreparable. Mot.47; *see Louisiana*, 2024 WL 2978786, at *19; *Snipes v. Scott*, 2019 WL 163352, at *5 (N.D. Fla. Jan. 10). Though the Department says these harms aren't "'imminent,'" Opp.55, it never explains why. The Department concedes it will start enforcing the rule on August 1—one month after the preliminary-injunction hearing, and clearly "before a trial on the merits can be had." *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263 (3d Cir. 2000). Once the rule goes into force, schools must immediately let males into female spaces and adopt the rule's speech-chilling definition of harassment. The procedural protections in the 2020 rule will also immediately disappear. The Department never denies that schools will make these changes, so Plaintiffs have at least a "sufficient risk of irreparable harm." *Jones v. Tex. Dep't of Crim. Just.*, 880 F.3d 756, 760 (5th Cir. 2018); *accord United States v. Alabama*, 443 F. App'x 411, 419 (11th Cir. 2011) ("substantial risk of irreparable injury" is enough).

**Balance of Harms & Public Interest**: "[N]either the government nor the public has any legitimate interest in enforcing an" unlawful rule. *Otto v. Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020). The Department never disagrees. Opp.55-57. Though it says the public has an interest in enforcing rules that the government has the "authority to enforce," Opp.55, the Department doesn't have the authority to enforce this rule. And the public's interest in "preventing sex discrimination," Opp.56, is beside the point because the public has no interest in preventing sex discrimination *illegally*, *see TN Guidance*, 2024 WL 2984295, at *26; *Louisiana*, 2024 WL 2978786, at *20; *TN Rule*, 2024 WL 3019146, at *38-42. Besides, a stay will simply leave the 2020 rule in place, and the Department makes no argument—and cites no evidence—that the existing rules meaningfully allow sex discrimination.

## III.  Plaintiffs' requested relief is normal and appropriate.

In a breezy two pages, the Department says this Court should limit the interim relief to only certain parties (Plaintiffs here) and only certain parts of the rule (the provisions that are likely illegal). Opp.57-59. The Court should grant *at least* that much relief. But it can also stay the effective date without these artificial limits.

In terms of parties, the Department makes an argument that this Court has no power to accept. In recent years, federal agencies have started arguing that "the APA does not authorize … vacatur." Opp.57. The Department is free to make that argument to the Supreme Court. But Eleventh Circuit precedent forecloses it here. *See*

*Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, 100 F.4th 1349, 1359 n.12 (11th Cir. 2024) ("vacatur" is "'the ordinary APA remedy'"). In fact, "[e]very circuit" rejects this argument. Gaiser, *The Truth of Erasure: Universal Remedies for Universal Agency Actions*, at 3 n.4 (forthcoming Chi. L. Rev. Online 2024), perma.cc/J9YM-42QR. All circuits agree that vacatur is not only authorized by the text of the APA, but that it "operate[s] on the … agency action" itself; it is not limited to specific parties. *Sustainable*, 100 F.4th at 1359 n.12; *see Griffin v. HM Fla.-ORL*, 144 S.Ct. 1, 2 n.1 (2023) (Kavanaugh, J., concurring). And because this Court can vacate the rule, it can certainly take the "lesser" step of postponing the rule's effective date. *Texas v. Biden*, 646 F. Supp. 3d 753, 769 (N.D. Tex. 2022).

Like vacatur, a stay of the effective date operates on the rule itself. Section 705 allows a court "to postpone the effective date of an agency action *or* to preserve status or rights." (Emphasis added.) The first clause operates on the "agency action," while the latter operates on the parties. "[H]alting or postponing" is a "stay" that "temporarily divest[s] an *order* of enforceability," while an injunction to preserve rights "is directed at *someone*, and governs that party's conduct." *Nken v. Holder*, 556 U.S. 418, 428 (2009) (emphases added). So "'the scope of preliminary relief … under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted.'" *Texas*, 2024 WL 2947022, at *47.

A stay of the effective date itself, rather than for Plaintiffs only, would not "raise all the same problems as a nationwide injunction." Opp.58. A stay under §705 is a "'temporary form of vacatur.'" *Watterson v. ATF*, 2024 WL 897595, at *7 (E.D. Tex. Mar. 1). And vacatur, this Court recently explained, "cannot be a nationwide injunction" because it "is not an injunction" at all. *Green Rock v. IRS*, 654 F. Supp. 3d 1249, 1256 (N.D. Ala. 2023), *aff'd*, 2024 WL 2821767 (11th Cir. June 4). Per the Supreme Court, vacatur is "'less drastic'" than an injunction. *Id.* (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010)). A stay likewise "'does not order the defendant to do anything; it only removes the source of the defendant's authority'"—and only temporarily. *Watterson*, 2024 WL 897595, at *7.

Even if Plaintiffs were seeking a nationwide injunction, they'd be entitled to one because narrower remedies would not provide them "'complete relief.'" *Georgia*, 46 F.4th at 1303. As Plaintiffs explained in their motion, only nationwide relief would protect the privacy and constitutional rights of their students attending school in other States. Mot.49. The Department never responds, forfeiting the point at this stage. Nor does the Department explain how a stay that is limited to "Plaintiffs," Opp.57, would not be nationwide anyway, *see Labrador v. Poe ex rel. Poe*, 144 S.Ct. 921, 932 (2024) (Kavanaugh, J., concurring) (explaining that, if the plaintiff is "a State" or "association," an injunction "only as to the particular plaintiffs … could still have widespread effect"). These States and organizations have students who

attend schools across the country. Mot.49; *e.g.*, Mailman Decl. (Doc. 7-11) ¶8; Neily Decl. ¶3; Trump Decl. ¶3, ¶13.[*]

As for provision-based limits, the Department gives this Court no basis to stay the effective date for only parts of the rule. The rule has only one effective date, *see* 89 Fed. Reg. at 33,840-41; and the APA tells courts to stay "*the* effective date," 5 U.S.C. §705 (emphasis added). This "clause does not merely speak to *part* of an agency action or indicate courts should take a piecemeal approach." *Texas*, 646 F. Supp. 3d at 781; *see* Gaiser 11 ("Just as an agency may postpone its rule or order wholesale, so may a reviewing court."). A stayed effective date is "indefinitely" postponed, making the associated rule "a nullity" that doesn't "require adherence." *NRDC v. EPA*, 683 F.2d 752, 762 (3d Cir. 1982).

The Department cannot argue otherwise by lightly gesturing at severability. Opp.59. Its opposition makes no developed argument about severability; it merely cites, without further discussion, the rule's insistence that its provisions are severable. Mot.59. "But 'the ultimate determination of severability will rarely turn on the

---

[*] Though the district courts in Louisiana and Tennessee granted preliminary injunctions that applied only to those plaintiffs, this case is different. Those cases didn't involve associations with students across the country. And those State Plaintiffs didn't stress the rule's illegal procedures or the harms that the rule inflicts on their citizens attending school in other States. Broader relief is warranted here because the harms are broader. And a stay, as explained, would be a less drastic form of relief than the injunctions granted there. But Plaintiffs agree that this Court should *at least* enter a plaintiff-specific injunction.

presence or absence' of a severability clause." *Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1145 (D.C. Cir. 2022). At this early stage, the Court needn't wade through hundreds of pages—with zero help from the government—looking for provisions to stay and others to exclude, all before August 1. The Court should instead stay the rule "in its entirety" because the Department didn't "brie[f] how [the court] might craft a limited stay," even though it was the Department's burden to do so. *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016).

Even if this Court should conduct a severability analysis at this early stage, the result would be the same. Severability turns on two questions: whether the agency would have adopted the rule without the challenged provisions, and whether such a rule would "'function sensibly.'" *Texas v. United States*, 2023 WL 5951196, at *20 (S.D. Tex. Sept. 13). The Department cannot prevail on either question because, again, it "ma[de] no developed argument." *See Data Mktg.*, 45 F.4th at 859-60; *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 680-83 (11th Cir. 2014). It had no good argument to make.

On the first question, there's "'substantial doubt'" that the agency would've adopted a mutilated form of the rule. *Baltimore v. Azar*, 439 F. Supp. 3d 591, 615 (D. Md.), *aff'd*, 973 F.3d 258 (4th Cir. 2020). The rule lists as "Major Provisions" the ones that Plaintiffs challenge, and those provisions feature prominently in the description of the rule's core purposes. 89 Fed. Reg. at 33,476-77. Erasing major

provisions fatally undermines the rule's reason for being. *See Baltimore*, 439 F. Supp. 3d at 615.

On the second question, the Department "ha[s] not explained how the provisions should be severed" or how the new rule would sensibly function. *Id.* "[I]t is not the judiciary's duty or role to write or rewrite regulations or rules." *Texas*, 2023 WL 5951196, at *21; *accord TN Rule*, 2024 WL 3019146, at *42-43. If Plaintiffs are right about "gender identity," the definition of sexual harassment, and the grievance procedures, then the rule won't "survive … in anything approaching recognizable form." *North Carolina v. EPA*, 531 F.3d 896, 929 (D.C. Cir. 2008) (cleaned up). That's true even if Plaintiffs are right *only* about gender identity. *See TN Rule*, 2024 WL 3019146, at *43 (holding that the "severability clause had little impact … because the impermissible definition of 'discrimination on the basis of sex' … permeates the remaining regulations"). Staying only parts of the rule would also create a byzantine mess for the States and schools, who will be bound by a byzantine combination of the Trump rule and the Biden rule. Rulewide relief—temporarily, giving this Court and the parties time to brief issues like severability in light of the full administrative record—is the only prudent course. *E.g.*, *id.*; *Louisiana*, 2024 WL 2978786, at *21.

## CONCLUSION

This Court should grant Plaintiffs' motion before August 1.

30

Dated: June 19, 2024

Ashley Moody
  *Attorney General*

s/ *James H. Percival*
James H. Percival (pro hac vice)
  *Chief of Staff*
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for Florida*

Christopher M. Carr
  *Attorney General*

s/ *Stephen J. Petrany*
Stephen J. Petrany (pro hac vice)
  *Solicitor General*
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Georgia*

Alan Wilson
  *Attorney General*

s/ *Joseph D. Spate*
Joseph D. Spate (pro hac vice)
  *Assistant Deputy Solicitor General*
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for South Carolina*

Respectfully submitted,

Steve Marshall
  *Attorney General*

s/ *Edmund G. LaCour Jr.*
Edmund G. LaCour Jr.
  *Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for Alabama*

s/ *Cameron T. Norris*
Cameron T. Norris (pro hac vice)
Thomas S. Vaseliou (pro hac vice)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

*Counsel for IWLC, IWN, PDE,
Speech First*

## CERTIFICATE OF COMPLIANCE

This reply complies with this Court's orders because it is thirty pages (excluding the parts that can be excluded), double-spaced, and prepared in 14-point Times New Roman.

Dated: June 19, 2024 *s/ Cameron T. Norris*

## CERTIFICATE OF SERVICE

I e-filed this brief with the Court, which will email everyone requiring service.

Dated: June 19, 2024 *s/ Cameron T. Norris*