FILED

2024 Jun-24  PM 03:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, *et al.,* | |
| Plaintiffs, | |
| v. | Case No. 7:24-cv-00533-ACA |
| MIGUEL CARDONA, in his official capacity as Secretary of Education, *et al.,* | |
| Defendants. | |

---

### *AMICUS* BRIEF OF STOP ABUSIVE AND VIOLENT ENVIRONMENTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Edward A. R. Miller
(ASB-7815-D47M)
THE MILLER FIRM
1605 Main Street
Daphne, Alabama 36526
Phone: (251) 216-0001
Fax: (251) 216-0050
edward@themillerfirm.com

Benjamin F. North,
*pro hac vice* forthcoming
Lindsay R. McKasson,
*pro hac vice* forthcoming
Shawn M. Flynn,
*pro hac vice* forthcoming

BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
ben@binnall.com
lindsay@binnall.com
shawn@binnall.com

*Counsel for Stop Abusive and Violent Environments*

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................ii

TABLE OF AUTHORITIES .........................................................................iii

STATEMENT OF INTEREST OF AMICUS CURIAE ................................ 1

INTRODUCTION ........................................................................................... 2

ARGUMENT ................................................................................................... 3

   I.   Administrative agencies are creatures of statute, lacking authority to issue rules contrary to the judgment of federal circuit courts. ................................... 3

   II.   The Department of Education's Final Rule fails to meet the strict requirements for intercircuit nonacquiescence. ................................ 6

      a. The Department's attempts to redefine "sex" to include "gender identity" has already been rejected. ............................................................ 7

      b. The Department ignores the federal circuit court opinions requiring due process protections. ....................................................................... 10

CONCLUSION................................................................................................ 14

CERTIFICATE OF SERVICE..................................................................... 16

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.,*

    57 F.4th 791, 809 (11th Cir. 2022) ............................................................. 8

*Arce-Vences v. Mukasey,*

    512 F.3d 167, 172 (5th Cir. 2007) ............................................................. 5

*Biden v. Nebraska,*

    143 S. Ct. 2355, 2373 (2023) ..................................................................... 9

*Cavalier v. Cath. Univ. of Am.,*

    306 F. Supp. 3d 9, 27 (D.D.C. 2018) ....................................................... 11

*Doe v. Miami Univ.,*

    882 F.3d 579, 603 (6th Cir. 2018) ........................................................... 11

*Doe v. Princeton Univ.,*

    30 F.4th 335, 348 (3d Cir. 2022) ............................................................. 13

*Doe v. Purdue Univ.,*

    464 F. Supp. 3d 989, 1003 (N.D. Ind. 2020) .......................................... 11

*Doe v. Purdue Univ.,*

    928 F.3d 652, 663 (7th Cir. 2019) (Barrett, J.) ......................... 10, 11, 13

*Doe v. Regents of Univ. of California,*

    28 Cal. App. 5th 44 (2018) ....................................................................... 13

iii

*Doe v. Univ. of Scis.*,

    961 F.3d 203, 206 (3d Cir. 2020) ............................................................................. 13

*Fletcher v. Peck*,

    6 Cranch 87, 136 (1810) ...................................................................................... 3

*Grant Med. Ctr. v. Burwell*,

    204 F. Supp. 3d 68, 78 (D.D.C. 2016), *aff'd sub nom. Grant Med. Ctr. v. Hargan*,

    875 F.3d 701 (D.C. Cir. 2017) ....................................................... 4, 5, 8, 12, 14

*Heartland Plymouth Ct. MI, LLC v. Nat'l Lab. Rels. Bd.*,

    838 F.3d 16, 22 (D.C. Cir. 2016) .......................................................................... 5, 6

*Louisiana, et al. v. U.S. Dep't of Education, et al.*,

    Case No. 3:24-cv-00563-TAD-KDM, ECF No. 53 (W.D. La. June 13, 2024) ........ 10

*Marbury v. Madison*,

    5 U.S. 137, 177 (1803) ......................................................................................... 3

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*,

    595 U.S. 109, 117 (2022) ...................................................................................... 3

*Oliver v. Univ. of Texas Sw. Med. Sch.*,

    No. 3:18-CV-1549-B, 2019 WL 536376, at *13 (N.D. Tex. Feb. 11, 2019) ............ 11

*Patchak v. Zinke*,

    583 U.S. 244, 268 (2018) (Roberts, C. J., Kennedy, J., Gorsuch, J., dissenting) ... 3

*Singh v. Ilchert*,

    63 F.3d 1501, 1508 (9th Cir. 1995) ...................................................................... 5

*State of Tennessee v. Dep't of Educ.*,

    No. 22-5807, 2024 WL 2984295, at *23 (6th Cir. June 14, 2024) ........................... 9

*Stern v. Marshall*,

    564 U.S. 462, 483 (2011) .................................................................................... 3

*Texas v. Cardona*,

    No. 4:23-CV-00604-O, 2024 WL 2947022, at *31 (N.D. Tex. June 11, 2024)......... 9

*Walsh v. Hodge*,

    975 F.3d 475, 485 (5th Cir. 2020)........................................................................ 13

*West Virginia v. Environmental Protection Agency*,

    142 S.Ct. 2587, 2614 (2022) ............................................................................... 9

## STATUTES

20 U.S.C. § 1681.................................................................................................... 7

20 U.S.C. § 1681(a)(5) ........................................................................................... 7

20 U.S.C. § 1681(a)(6) ........................................................................................... 7

20 U.S.C. § 1681(a)(8) ........................................................................................... 7

20 U.S.C. § 1689(a)(6) ........................................................................................... 9

## OTHER AUTHORITIES

*Adams' Argument for the Defense: 3-4 December, 1770*, NATIONAL ARCHIVES

    ... https://founders.archives.gov/documents/Adams/05-03-02-0001-0004-0016 (last

    visited June 17, 2024) .......................................................................................... 2

*Faculty Members Targeted by Title IX*, SAVE, http://www.saveservices.org/sexual-assault/faculty-members/ (last visited June 17, 2024) ........................................... 1

H.R. 5, 117th Cong. (2021-2022) ..................................................................... 9

*Interactive Spreadsheet of Lawsuits Against Universities*, SAVE, http://www.saveservices.org/sexual-assault/complaints-and-lawsuits/lawsuit-analysis/ (last visited June 17, 2024).................................................................. 1

*Key Information about Title IX Regulation*, SAVE, http://www.saveservices.org/title-ix-regulation/ (last visited June 17, 2024)........ 1

*Proposed Title IX Regulations Target Sex Bias on College Campuses*, SAVE, (Jan. 24, 2019) http://www.saveservices.org/2019/01/proposed-title-ix-regulations-target-sex-bias-on-college-campuses/ ....................................................................... 1

*Special Reports*, SAVE, http://www.saveservices.org/reports/ (last visited June 17, 2024).................................................................................................................... 1

*Statement in Support of Due Process in Campus Disciplinary Proceedings*, SAVE (Nov. 29, 2018), http://www.saveservices.org/wp-content/uploads/Due-Process-Statement-11.29.2018.pdf ...................................................................................... 1

*Victims Deserve Better,* SAVE, http://www.saveservices.org/sexual-assault/victims-deserve-better/ (last visited June 17, 2024) ........................................................... 1

## R<small>EGULATIONS</small>

34 C.F.R. § 106.33.......................................................................................... 9

34 C.F.R. § 106.36(c)...................................................................................... 9

34 C.F.R. § 106.37(a)(3) ................................................................................. 9

34 C.F.R. § 106.41(c) ............................................................................... 9

34 C.F.R. § 106.45(b)(5)(vi) ................................................................... 14

34 C.F.R. § 106.45(b)(6)(i) ..................................................................... 16

34 C.F.R. § 106.51(a)(4) ........................................................................... 9

34 C.F.R. § 106.58(a) ............................................................................... 9

34 C.F.R. § 106.60(b) ............................................................................... 9

34 C.F.R. § 106.61 ................................................................................... 9

34 C.F.R. 106.34(a)(3) ............................................................................. 9

34 C.F.R. pt. 86 (1975) ............................................................................ 9

Nondiscrimination on the Basis of Sex in Education Programs or Activities

    Receiving Federal Financial Assistance, 85 Fed. Reg. 41390, 30367 (July 12,

    2022) (to be codified at 34 CFR 106) ..................................................... 17

Nondiscrimination on the Basis of Sex in Education Programs or Activities

    Receiving Federal Financial Assistance, 89 Fed. Reg. 33474 (Aug. 1, 2024) (to be

    codified at 34 CFR 106) ....................................... 8, 10, 14, 15, 16, 17, 19

## STATEMENT OF INTEREST OF AMICUS CURIAE

Established in 2008, *amicus curiae* Stop Abusive and Violent Environments ("SAVE") is a 501(c)(3) non-profit, a DBA entity of the Center for Prosecutor Integrity, and leader in the national movement to assure fairness and due process on college campuses. In recent years, SAVE has identified numerous cases in which complainants were mistreated by campus Title IX procedures,[1] published numerous relevant Special Reports,[2] commented on proposed Title IX regulations,[3] coordinated a Due Process Statement signed by nearly 300 leading law professors and others,[4] sponsored an interactive spreadsheet of lawsuits against universities,[5] compiled information on the due process violations of faculty members,[6] and more.[7]

Through its research and experiences, SAVE has recognized the widespread discrimination, particularly against male students, that occurred primarily during the era of the Department of Education's 2011 Dear Colleague Letter. During that

---

[1] *Victims Deserve Better,* SAVE, http://www.saveservices.org/sexual-assault/victims-deserve-better/ (last visited June 17, 2024).

[2] *Special Reports*, SAVE, http://www.saveservices.org/reports/ (last visited June 17, 2024).

[3] *Proposed Title IX Regulations Target Sex Bias on College Campuses*, SAVE, (Jan. 24, 2019) http://www.saveservices.org/2019/01/proposed-title-ix-regulations-target-sex-bias-on-college-campuses/.

[4] *Statement in Support of Due Process in Campus Disciplinary Proceedings*, SAVE (Nov. 29, 2018), http://www.saveservices.org/wp-content/uploads/Due-Process-Statement-11.29.2018.pdf.

[5] *Interactive Spreadsheet of Lawsuits Against Universities*, SAVE, http://www.saveservices.org/sexual-assault/complaints-and-lawsuits/lawsuit-analysis/ (last visited June 17, 2024).

[6] *Faculty Members Targeted by Title IX*, SAVE, http://www.saveservices.org/sexual-assault/faculty-members/ (last visited June 17, 2024).

[7] *Key Information about Title IX Regulation*, SAVE, http://www.saveservices.org/title-ix-regulation/ (last visited June 17, 2024).

period, students were dragged through inquisitorial systems with no regard for basic due process rights that have existed in English common law since before the founding of the Republic.[8] The Department of Education issued much-needed regulations in 2020, that restored due process on campus. Now, through its Final Rule, the same Department of Education (under a new administration) seeks to remove these protections, returning students to the place it put them in 2011. Worse, the Department now seeks to expand the scope of conduct subject to the Title IX disciplinary process and redefine "sex" to include "gender identity."

## INTRODUCTION

On May 8, 2024, Plaintiffs moved to preliminarily enjoin the Title IX Final Rule from taking effect on August 1, 2024, alleging that the Final Rule violated the Administrative Procedure Act. ECF No. 7. On June 10, 2024, this Court ordered the Parties to submit supplemental briefing on the following question: "[w]hen an agency engages in rulemaking, can it consider a circuit court decision that is adverse to its proposed rule but nevertheless reject the decision?" ECF No. 27. Because *amicus* possesses subject matter expertise on the particular circuit court decisions that the Final Rule disregards or ignores, *amicus* submits the following brief for the Court's consideration.

---

[8] *Adams' Argument for the Defense: 3-4 December, 1770*, NATIONAL ARCHIVES https://founders.archives.gov/documents/Adams/05-03-02-0001-0004-0016 (last visited June 17, 2024).

## ARGUMENT

### I.   Administrative agencies are creatures of statute, lacking authority to issue rules contrary to the judgment of federal circuit courts.

The Department of Education is an administrative agency. As such, it lacks authority to issue the Final Rule in question, especially where it is contrary to rulings of federal courts. "Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022). Therefore, any authority or power possessed by an agency must derive from a power of Congress. *Id.* In other words, Congress cannot provide an agency with a power it does not have, including, for example, the judicial power. *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (the Article III judicial power may not be shared with either the Legislative or Executive branches); *Patchak v. Zinke*, 583 U.S. 244, 268 (2018) (Roberts, C.J., Kennedy, J., Gorsuch, J., dissenting) ("The Legislature wields the power to prescribe general rules for the government of society, but the application of those rules to individuals in society is the duty of the Judiciary") (citing *Fletcher v. Peck*, 6 Cranch 87, 136 (1810) (internal quotations omitted)).

Since the earliest days of our Republic, it has been "emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Because Article III courts possess the judicial power to decide what the law is—not Congress—it follows from this foundational principle that administrative agencies likewise do not have the power to decide what the law is

(because any power they exercise must derive from Congress). Therefore, when a federal circuit court makes a precedential determination of law relating to matters on which the agency issues rules, the agency has no power to issue rules contrary to the court's ruling.

Case law makes clear that "intracircuit nonacquiescence" (refusing to follow a circuit court within the jurisdiction in which the agency applies its rule) is never permissible; and "intercircuit nonacquiescence" (the refusal of an agency to follow circuit court decisions in other circuits) is only permissible on a temporary basis when the agency actively acknowledges its refusal to follow a circuit court and when the agency actually takes steps to seek national finality on the legal issue in question. "[A]gencies must abide by the superior power of the courts[]… [t]he [agency] is not a court nor is it equal to this court in matters of statutory interpretation." *Grant Med. Ctr. v. Burwell*, 204 F. Supp. 3d 68, 78 (D.D.C. 2016), *aff'd sub nom. Grant Med. Ctr. v. Hargan*, 875 F.3d 701 (D.C. Cir. 2017).

As the U.S. District Court for the District of Columbia noted, agencies that follow a policy of "intracircuit nonacquiescence" to the judgment of Article III courts have been roundly "condemned" by every circuit to address the issue. *Id.* at 79 (collecting cases).[9] Indeed, "[a] federal agency is obligated to follow circuit precedent

---

[9] The court noted the following circuit court opinions "condemning" the agency practice of refusing the follow the judgment of Article III courts: *Johnson v. U.S. R.R. Ret. Bd.*, 969 F.2d 1082, 1097 (D.C. Cir.1992) (citing *Hyatt*, 807 F.2d at 379; *Stieberger v. Bowen*, 801 F.2d 29, 36–37 (2d Cir.1986); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); *Lopez v. Heckler*, 725 F.2d 1489, 1503 (9th Cir.), vacated on other grounds and remanded, 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984); *Childress v. Secretary of HHS*, 679 F.2d 623, 630 (6th Cir.1982)); *see also Jones & Laughlin Steel Corp. v. Marshall*, 636 F.2d 32, 33 (3d Cir.1980); *Mary Thompson Hosp., Inc. v. NLRB*, 621 F.2d 858, 864 (7th Cir.1980). "[F]lagrant disregard

in cases originating within that circuit." *Singh v. Ilchert*, 63 F.3d 1501, 1508 (9th Cir. 1995); *Arce-Vences v. Mukasey*, 512 F.3d 167, 172 (5th Cir. 2007) (same). A "blithe" refusal to follow the law of the circuit is never permissible. *See Grant Med. Ctr.*, 204 F. Supp. 3d at 77.

Even in the few circumstances where "intercircuit nonacquiescence" has been tolerated, courts have still expressed severe skepticism and set strict limits on when intercircuit nonacquiescence can be tolerated. *Heartland Plymouth Ct. MI, LLC v. Nat'l Lab. Rels. Bd.*, 838 F.3d 16, 22 (D.C. Cir. 2016). *Heartland* considered possible theoretical justifications for intercircuit nonacquiescence, including if an agency advances a contrary rule in different circuits with the goal of seeking *certiorari* from the Supreme Court to eventually settle the law nationwide. *Id.* But the DC Circuit held that such a goal must actually be substantiated through attempts to see the law settled nationwide—including attempts to seek Congressional action or *certiorari* from the Supreme Court. *Id.* Moreover, the court held that the agency must "clearly assert its nonacquiescence, specifying its arguments against adverse precedent to preserve them for Supreme Court review. These two conditions characterize proper

---

of judicial precedent must not continue. Not only is the [agency] obligated under the principles of stare decisis to follow this court's decision ..., but it also owes deference to the other courts of appeals which have ruled on the issue." *Mary Thompson*, 621 F.2d at 864. It "raises grave constitutional and statutory questions" when an agency refuses to petition for Supreme Court review of an adverse circuit ruling and instead elects to continue to apply the rejected interpretation of an agency rule. *Johnson*, 969 F.2d at 1087; *see also id.* at 1092 (comparing nonacquiescence to Governor Orval Faubus' defiance of *Brown v. Bd. of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), at Little Rock) (citing *Lopez*, 725 F.2d at 1497). In *Johnson*, the Circuit noted that the Secretary of Health and Human Services previously exercised a policy of intracircuit nonacquiescence, but abandoned this policy "after being severely criticized by the Courts and by Congress." *Johnson*, 969 F.2d at 1093.8.

nonacquiescence." *Heartland*, 838 F.3d at 22. Because the agency in question actively *opposed* attempts to seek *certiorari* from the Supreme Court, the DC Circuit found that the agency's policy of intercircuit nonacquiescence was not justified. *Id.* at 23. Instead, it found that the NLRB's goal was self-serving—it sought to "see its interpretation of the federal labor laws prevail in as many cases as possible, rather than to change contrary law in particular circuits or ... serve as a percolator for the Supreme Court." *Id.* The DC Circuit found that such nonacquiescence amounted to bad faith. *Id.* at 25. The DC Circuit's analysis in *Heartland* is helpful because it articulates, even under a more forgiving view of agency rulemaking, when an agency's refusal to follow federal circuit courts may be permissible.

The careful limitations of agencies' power set forward by these cases is consistent with the rule that because an agency is creature of statute without the judicial power, any refusal to follow an Article III court can only be tolerated under very limited and temporary circumstances, if at all. Here, it should not be tolerated.

## II.  The Department of Education's Final Rule fails to meet the strict requirements for intercircuit nonacquiescence.

The Final Rule seeks to radically define the administration of Title IX in two major ways: (1) it redefines "sex" in the 1972 law to include the novel concept of "gender identity," and (2) it removes key due process protections for students accused of misconduct.[10] Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33474, 33882-33896

---

[10] The Final Rule also presents many other grave constitutional issues not addressed by this brief, which focuses only on the two major issues encompassed by the Court's question.

(Aug. 1, 2024) (to be codified at 34 CFR 106). As to both of these changes, the Department advances a view contrary to the prevailing view among circuit courts. Therefore, the Final Rule should be preliminarily enjoined.

### a. The Department's attempts to redefine "sex" to include "gender identity" has already been rejected.

As always, interpretation should begin with the text itself. Title IX presents a binary view of sex and makes no mention of concepts like "gender identity" or "sexual orientation" when defining the treatment of sex. *See* 20 U.S.C. § 1681 (referring repeatedly to "one sex" and "the other sex"). Prior regulations from the Department treated sex as a binary, referring multiple times to "one sex," especially as opposed to "the other sex," using the phrase "both sexes," and referencing "boys and girls" and "male and female teams." 34 C.F.R. §§ 106.33, 106.34(a)(3), 106.36(c), 106.37(a)(3), 106.41(c), 106.51(a)(4), 106.58(a), 106.60(b), 106.61; *see also* 34 C.F.R. pt. 86 (1975). In addition to these examples, Title IX contains an exemption for public undergraduate institutions with a historic "policy of admitting only students of one sex." 20 U.S.C. § 1681(a)(5). It also discusses organizations whose memberships have "traditionally been limited to persons of one sex," *see* 20 U.S.C. § 1681(a)(6), and "Father-son or mother-daughter activities," so long as similar opportunities provided for "one sex" are offered to "the other sex," *see* 20 U.S.C. § 1681(a)(8).

Against this backdrop, the Final Rule redefines the prohibition on sex discrimination to include "discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 89 Fed. Reg. 33476. The Final Rule also allows schools to maintain sex-

segregated programs, activities, and facilities, but it prohibits schools from enforcing these distinctions in a manner that causes "more than de minimis harm," which it has defined to include prohibiting a person from participating in education programs or activities consistent with their gender identity. *See id.* at 33816, 33819–20.

The Eleventh Circuit's prior opinion in *Adams* is directly contrary to this view. In that case, the Eleventh Circuit previously found a prohibition on sex discrimination did not include a prohibition on gender identity discrimination, because, among other things, any separation of students based on sex (e.g., a bathroom policy) would result in transgender students in both categories, thereby not excluding them on the basis of gender identity. *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 809 (11th Cir. 2022). The Department's inclusion of gender identity and sexual orientation in the Final Rule is directly contrary to the binding law in this circuit and the Department acknowledges as such. 89 Fed. Reg. 33821 (stating that the Department disagrees with *Adams*).

The Department does not, however, refrain from applying its rule to recipients in the Eleventh Circuit. It still seeks to apply its Final Rule in those states, contrary to the law pronounced by the Eleventh Circuit in *Adams.* As such, the Department engages in prohibited "intracircuit nonacquiescence" and this portion of the Rule must be enjoined at least as to states in the Eleventh Circuit. *See Grant Med. Ctr.*, 204 F. Supp. 3d at 77.

Buttressing this conclusion is the fact that Congress has also historically rejected invitations to address this issue and alter the binary state of Title IX. *See*

H.R. 5, 117th Cong. (2021-2022). As recently as the last Congress, it rejected the invitation to adopt legislation that would have protected against discrimination based on sex, sexual orientation, and gender identity in areas including public accommodations. *See id.* This opportunity to act on this issue, and the decision not to take it, is the opposite of a clear expression of delegation to the Department of Education through Title IX. *See Biden v. Nebraska*, 143 S. Ct. 2355, 2373 (2023) (chiding the attempt to claim administrative authority to take an action that Congress has chosen not to enact itself) (citing *West Virginia v. Environmental Protection Agency*, 142 S.Ct. 2587, 2614 (2022)). The Northern District of Texas has also recently determined that the references to "sexual orientation and gender identity" are references only to "statuses" and "do not otherwise alter how the statute contemplates '"sex."' *Texas v. Cardona*, No. 4:23-CV-00604-O, 2024 WL 2947022, at *31 (N.D. Tex. June 11, 2024) (citing 20 U.S.C. § 1689(a)(6) (directing the formation of a sexual-violence task force to, in part, "develop recommendations on . . . inclusive approaches to supporting survivors, which include consideration of . . . lesbian, gay, bisexual, or transgender (commonly referred to as 'LGBTQI+') status")). The court aptly found "these statuses do[] nothing more than authorize information gathering, presumably for potential statutory changes in the future. Until Congress enacts such a change, § 1689(a)(6) cannot be construed as broadening the definition of sex." *Id.* The Sixth Circuit similarly suggested that the Department cannot interpret Title IX to ban discrimination on the basis of gender identity. *State of Tennessee v. Dep't of Educ.*, No. 22-5807, 2024 WL 2984295, at *23 (6th Cir. June 14, 2024).

9

Finally, the Western District of Louisiana's recent decision in *Louisiana, et al. v. U.S. Dep't of Education, et al.*, Case No. 3:24-cv-00563-TAD-KDM, ECF No. 53 (W.D. La. June 13, 2024) is instructive. There, the court completely enjoined the Final Rule from taking effect (as to the plaintiff states in that case). In relevant part, the case held "the term "sex discrimination" only included discrimination against biological males and females at the time of enactment … in 1972." *Id.* at 19-20.

These Sixth Circuit, Texas, and Louisiana cases are instructive on the point that the Department cannot unilaterally redefine "sex" to include "gender identity." The Court could, but need not, discuss these cases or reach those merits questions here because the Department's willful disregard for the Eleventh Circuit's decision in *Adams* is enough for this Court to find that the Final Rule cannot take effect within the Eleventh Circuit, at least insofar as the Final Rule pertains to "sex" and "gender identity." To hold otherwise would authorize prohibited "intracircuit nonacquiescence," creating serious separation of powers concerns.

### b.   The Department ignores the federal circuit court opinions requiring due process protections.

The Final Rule removes due process and other procedural protections for students by removing the right to review evidence and the right to a live hearing with cross examination. 89 Fed. Reg. 33696, 33747. This combination limits any ability of the student to advocate for his or her rights, limitations that have already been criticized or rejected by federal circuit courts. *See, e.g., Doe v. Purdue Univ.*, 928 F.3d 652, 663 (7th Cir. 2019) (Barrett, J.).

One of the major rights stripped from students in the Final Rule is the right to review all the evidence collected by the school in the Title IX case. 89 Fed. Reg. 33696. Whereas the 2020 Rule requires that a school disclose to the parties all "directly related evidence" (34 C.F.R. § 106.45(b)(5)(vi)), the Final Rule permits a school to only disclose a "description" of the relevant evidence. 89 Fed. Reg. 33696. Even more alarming, the Final Rule permits schools to provide only an *oral* description of the evidence to the student-parties. 89 Fed. Reg. 33696 ("Under § 106.45(f)(4), a recipient may provide a description of the evidence orally or in writing"). Only when the student knows enough about the law and federal regulations to specifically request the evidence against him, does the school need to provide him that evidence. 89 Fed. Reg. 33682.

There is a long history in Title IX caselaw of universities losing cases (either on a constitutional due process theory or a Title IX theory) because they failed to give the parties access to the evidence.[11] Not only does the Department fail to acknowledge or discuss the above cited cases (*infra*, n.11), it also sets forth requirements that simultaneously hurt students and schools.

---

[11] *See, e.g., Doe v. Purdue Univ.*, 928 F.3d 652, 663 (7th Cir. 2019) (Barrett, J.) ("And withholding the evidence on which it relied in adjudicating his guilt was itself sufficient to render the process fundamentally unfair"); *Doe v. Purdue Univ.*, 464 F. Supp. 3d 989, 1003 (N.D. Ind. 2020) ("Because the Defendants withheld evidence they used to find the Plaintiff guilty of violating university policy, the disciplinary process was fundamentally unfair"); *Oliver v. Univ. of Texas Sw. Med. Sch.*, No. 3:18-CV-1549-B, 2019 WL 536376, at *13 (N.D. Tex. Feb. 11, 2019) (denying motion to dismiss due process and Title IX claims where accused was never provided access to the evidence against him); *Doe v. Miami Univ.*, 882 F.3d 579, 603 (6th Cir. 2018) (denying motion to dismiss due process claim where university did not give accused a copy of the disciplinary file); *see also Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d 9, 27 (D.D.C. 2018) (denying motion to dismiss Title IX deliberate indifference claim where university failed to "preserve and seek out important evidence").

While the Final Rule permits schools to only provide an oral "description" of the evidence (89 Fed. Reg. 33696), it still requires schools to collect and compile all the evidence, to be provided to students upon request. 89 Fed. Reg. 33682. In other words, a school must still incur the costs associated with investigating and adjudicating each Title IX case, but the students are still deprived of access to that evidence. In short, it is worst case scenario for both students and schools. Moreover, without so much as acknowledging contrary opinions, such as *Doe v. Purdue*, the Department has not satisfied one of the elements necessary for "intercircuit nonacquiescence"—a clear assertion that the Department disagrees. *See Grant Med. Ctr.*, 204 F. Supp. 3d at 77.

Similarly, the Final Rule also eliminates the right to a live hearing with cross examination. 89 Fed. Reg. 33747. Whereas the 2020 Rule requires that all postsecondary schools provide a live hearing with cross examination to adjudicate all formal complaints of sexual harassment (34 C.F.R. § 106.45(b)(6)(i)), the Final Rule permits a postsecondary school to adjudicate a Title IX matter without a live hearing at all, and through a model titled the "single investigator model." 89 Fed. Reg. 33746-33747. A school uses a "single investigator model" when the same official serves as both investigator and decisionmaker, and potentially also as Title IX Coordinator, thereby combining all prosecutorial, investigative, and adjudicative functions into one person. Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 41390, 30367 (July 12, 2022) (to be codified at 34 CFR 106). Courts have found this to be an inherently

12

unfair procedure.[12] The Department, however, explains that it "has good reason to believe that many recipients will appreciate the flexibility these final regulations will afford them, including the option to use a single-investigator model, to better fulfill their obligation not to discriminate based on sex…" 89 Fed. Reg. 33662. But this "flexibility" to invade students' constitutional right to due process and basic fairness in fact amounts to no flexibility at all.

Several federal courts of appeal have recognized a student's constitutional right to a live hearing with some form of cross examination (even if only through a hearing panel) in the Title IX context.[13] Courts also consistently hold a public university student's "circumstances entitle[] him to relatively formal procedures." *See Purdue*, 928 F.3d at 663. The 2020 Rule integrated these holdings and mitigated concerns of the hearing degenerating into a "shouting match," through its requirement that all cross examination be conducted by the advisor and never through a party directly. 34 C.F.R. § 106.45(b)(6)(i) (taking into consideration *Walsh v. Hodge*, 975 F.3d 475, 485 (5th Cir. 2020)). The Final Rule, however, permits a school to drop far below even the low standard expressed in the First Circuit, which

---

[12] *See, e.g., Doe v. Univ. of Scis.*, 961 F.3d 203, 206 (3d Cir. 2020) (finding that the "single investigator model" violates principles of basic fairness in a university Title IX proceeding); *Doe v. Princeton Univ.*, 30 F.4th 335, 348 (3d Cir. 2022) (same).

[13] *See generally, Doe v. Baum,* 903 F.3d 575 (6th Cir. 2018) (holding that when credibility is at issue, student is entitled to true cross-examination); *Haidak v. U. of Massachusetts-Amherst*, 933 F.3d 56, 70 (1st Cir. 2019) (holding "some form" of cross-examination is required, if only through a hearing panel, provided the hearing panel "conduct[s] reasonably adequate questioning"); *Doe v. Regents of Univ. of California,* 28 Cal. App. 5th 44 (2018) (holding selective questioning by a hearing panel can violate student's due process rights); *see also Doe v. U. of Scis.*, 961 F.3d 203 (3d Cir. 2020) ("basic fairness" requires cross-examination).

held cross examination through a hearing panel was constitutionally sufficient. *Haidak,* 933 F.3d at 70-71. Under the Final Rule, schools will be able to deny the student parties any right to a hearing, which necessarily impairs the ability of schools to make the credibility determinations it needs to make. *See Baum*, 903 F.3d at 580.

The Department's Final Rule deprives both student parties of the benefit of strenuously testing their opponent's story through cross examination; instead permitting the school to make decisions on these sensitive cases behind closed doors, without ever allowing either party the right to be heard in a live hearing. 89 Fed. Reg. 33895 (to be codified at 34 C.F.R. § 106.46(g))**Error! Bookmark not defined.**. The Department makes this judgment, contrary to the circuit court opinions discussed above, without even acknowledging many of the cases (the Final Rule does not acknowledge *Purdue*, *Univ. of Scis,* or *Princeton Univ.*). It seeks to remove the requirement for some form of live hearing where at least two circuits have required it. *Baum*, 903 F.3d 575; *Haidak,* 933 F.3d at 70-71. Without so much as acknowledging the each of the seminal cases going the other way, the Department again fails to satisfy one of the necessary elements for "intercircuit nonacquiescence," a clear assertion of the Department's disagreement. *See Grant Med. Ctr.*, 204 F. Supp. 3d at 77.

## CONCLUSION

The Department has either willfully engaged in prohibited "intracircuit nonacquiescence" or failed to make the required showing for "intercircuit

nonacquiescence" or both. Either way, the Department has not adequately justified its departure from the opinions of the federal circuit courts. For this reason (and those outlined in Plaintiffs' motion), the Final Rule should be enjoined.

Dated: June 24, 2024

Respectfully submitted,

/s/ Edward A. R. Miller
Edward A. R. Miller
(ASB-7815-D47M)
The Miller Firm
1605 Main Street
Daphne, Alabama 36526
Phone: (251) 216-0001
Fax: (251) 216-0050
edward@themillerfirm.com

Benjamin F. North, *pro hac vice* forthcoming
Lindsay R. McKasson, *pro hac vice* forthcoming
Shawn M. Flynn, *pro hac vice* forthcoming
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
ben@binnall.com
lindsay@binnall.com
shawn@binnall.com

*Counsel for SAVE*

## CERTIFICATE OF SERVICE

I certify that on June 24, 2024, I filed copy of the foregoing with the Clerk of

Court using the CM/ECF system, which will send a copy to all counsel of record.


/s/  Edward A. R. Miller
Edward A. R. Miller