## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| State of ALABAMA, *et al.*,<br><div align="right">*Plaintiffs*,</div><br>v.<br><br>Miguel CARDONA, in his official<br>Capacity as U.S. Secretary of<br>Education, *et al.*,<br><div align="right">*Defendants*.</div> | No. 7:24-cv-533-ACA |

## NOTICE OF SUPPLEMENTAL AUTHORITIES

A few hours ago, the Sixth Circuit upheld a preliminary injunction of the entire rule. *See Tennessee v. Cardona*, Doc. 41-1, No. 24-5588 (6th Cir. July 17, 2024) (Op. attached). So did the Fifth Circuit, just a bit after the Sixth. *Louisiana v. DOE*, No. 24-30399 (5th Cir. July 17, 2024) (Op. attached).

In an opinion by Chief Judge Sutton, the Sixth Circuit first ruled that "the Rule's definition of sex discrimination" likely "exceeds the Department's authority." *Tennessee* Op.4-5. It refused to graft *Bostock*'s Title VII holding onto Title IX, reasoning that the two statutes are "materially different." *Id.* at 4-6. (That conclusion is even easier here, given the Eleventh Circuit's binding precedent in *Adams* and *Eknes-Tucker*.)

Because the new definition of sex discrimination likely violates the statute, the Sixth Circuit held that the rest of the rule should be enjoined too. The rule's "central provisions," "particularly the new definition of sex discrimination," appear

to "touch every substantive provision of the Rule." *Id.* at 6-7. And with that new definition rightfully enjoined, it is "hard to see how all of the schools covered by Title IX could comply" or even "properly train their teachers" with "so little time before the start of the new school year." *Id.* at 7. "[R]olling out hundreds of pages of a new rule on August 1, just before the start of the school year, will place an onerous burden on [educators]—loads of time and lots of costs that will only escalate if [courts] leave confusion over the States' obligations under the Rule." *Id.* at 8.

Finally, the Sixth Circuit rejected the Department's skeletal severability argument. Echoing points that Plaintiffs have made here, the Sixth Circuit deemed this argument forfeited, since "the Department mentioned severability below in just a few lines of its briefs without telling the district court which other provisions should be severed." *Id.* Even if that argument had been preserved, the Department "has not identified any evidence that it contemplated, *during the rulemaking process*, how the remainder of the Rule would apply without any of its core provisions." *Id*. at 7 (emphasis added). Nor did the rule's "cost-benefit analysis" contemplate "the idea of allowing these provisions to go into effect with a *different* definition of sex discrimination." *Id.*

The Fifth Circuit also upheld a preliminary injunction of the entire rule. It held that the Department "forfeit[ed] its severability argument" in the district court by raising it only in cursory fashion. *Louisiana* Op. at 4. Even if the argument were

preserved, a court shouldn't "maintain … tangential provisions that might or might not have been formulated in the absence of the heart of the Rule." *Id.* at 5. "[R]ewriting of the Rule … is not th[e] court's job." *Id.* (citing *Ohio v. EPA*, 144 S. Ct. 2040 (2024)). Finally, "allowing the Rule to remain in place … would inflict enormous administrative costs and great legal uncertainty on recipients of federal funds." *Id.* The Department, by contrast, isn't "injured by putting off the enforcement of a Rule it took three years to promulgate after multiple delays." *Id.* at 6.

For similar reasons, this Court should stay the rule's effective date in full, or at least preliminarily enjoin enforcement of the whole rule in the Plaintiff States.

Dated: July 17, 2024

Ashley Moody
  *Attorney General*

*s/ James H. Percival*
James H. Percival (pro hac vice)
  *Chief of Staff*
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for Florida*


Christopher M. Carr
  *Attorney General*

*s/ Stephen J. Petrany*
Stephen J. Petrany (pro hac vice)
  *Solicitor General*
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Georgia*


Alan Wilson
  *Attorney General*

*s/ Joseph D. Spate*
Joseph D. Spate (pro hac vice)
  *Assistant Deputy Solicitor General*
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for South Carolina*

Respectfully submitted,

Steve Marshall
  *Attorney General*

*s/ Edmund G. LaCour Jr.*
Edmund G. LaCour Jr.
  *Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for Alabama*


*s/ Cameron T. Norris*
Cameron T. Norris (pro hac vice)
Thomas S. Vaseliou (pro hac vice)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

*Counsel for IWLC, IWN, PDE,
Speech First*

**CERTIFICATE OF COMPLIANCE**

This notice complies with this Court's orders because it is three pages, excluding the parts that can be excluded, is double-spaced, and is prepared in 14-point Times New Roman.

Dated: July 17, 2024                    *s/ Cameron T. Norris*

**CERTIFICATE OF SERVICE**

I filed this notice on the Court's electronic filing system, which will email everyone requiring notice.

Dated: July 17, 2024                    *s/ Cameron T. Norris*

No.  24-5588

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Jul 17, 2024

KELLY L. STEPHENS, Clerk

STATE OF TENNESSEE, et al.,        )
                                   )
        Plaintiffs-Appellees,      )
                                   )
and                                )        O R D E R
                                   )
CHRISTIAN EDUCATORS ASSOCIATION    )
INTERNATIONAL, et al.,             )
                                   )
        Intervenors-Plaintiffs-Appellees,  )
                                   )
v.                                 )
                                   )
MIGUEL CARDONA, in his official capacity as  )
Secretary of Education, et al.,    )
                                   )
        Defendants-Appellants.     )

Before:  SUTTON, Chief Judge; BATCHELDER and MATHIS, Circuit Judges.

SUTTON, Chief Judge.  Secretary of Education Miguel Cardona and the U.S. Department of Education (collectively, the Department) seek a stay of parts of the district court's preliminary injunction with respect to an administrative rule promulgated under Title IX.  For the reasons elaborated below, we deny the motion for a stay and expedite the appeal.

I.

*The Rule*.  "No person in the United States," Title IX says, "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a). The statute empowers the Department to promulgate rules "consistent with achievement of the

objectives of" Title IX. *Id.* § 1682. On April 29, 2024, the Department promulgated a Rule under Title IX entitled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance," 89 Fed. Reg. 33474 (Apr. 29, 2024) (to be codified at 34 C.F.R. § 106). The Rule is scheduled to go into effect on August 1, 2024. *Id.* at 33476.

The Rule provides a new definition of "[d]iscrimination on the basis of sex" under 34 C.F.R. § 106.10. As amended, the Rule covers "discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 89 Fed. Reg. 33886. The Rule also amends 34 C.F.R. § 106.2 to add a prohibition on "[h]ostile environment harassment," defined as "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity (*i.e.*, creates a hostile environment)." *Id.* at 33884. In view of the new scope of sex-based discrimination under § 106.10, this addition to § 106.2 covers the refusal to use a student's preferred pronoun. *See id.* at 33516. In addition, the Rule amends 34 C.F.R. § 106.31(a)(2) to clarify that schools may not "prevent[] a person from participating in an education program or activity consistent with the person's gender identity." *Id.* at 33887. As a result, § 106.31(a)(2) applies to "restrooms and locker rooms, access to classes and activities, and policies such as appearance codes (including dress and grooming codes)." *Id.* at 33816 (internal citations omitted).

*Procedural history.* Four States (Indiana, Ohio, Tennessee, and West Virginia) and two Commonwealths (Kentucky and Virginia) filed this lawsuit against the Department to block enforcement of the Rule. They claim that § 106.10 "contravenes Title IX's text and the meaning of the Department's own regulations," that § 106.2 runs afoul of the First and Fourteenth Amendments, and that the Rule generally violates the Spending Clause, exceeds the agency's authority, and turns on arbitrary and capricious rulemaking. R.1 at 70. Soon after the States filed this lawsuit, the Christian Educators Association International, a voluntary membership

organization comprised of Christians in the teaching profession, intervened to support the action. So too did A.C., a fifteen-year-old middle school student in West Virginia. She complained that a student who was assigned male at birth but identifies as female was allowed to compete against, and share facilities with, A.C. and the rest of the girls' track and field team. The intervenors challenged § 106.2 on First Amendment grounds and § 106.31(a)(2)'s inclusivity mandate as violating students' and school employees' rights to bodily privacy, safety, and sporting integrity.

The plaintiffs moved the district court for a preliminary injunction preventing the Department from enforcing the Rule. In a thorough 93-page opinion, the district court granted the motion and enjoined the Rule in its entirety. The Department appealed.

The Department moved the district court for a stay of one aspect of its merits ruling and a partial stay of the scope of the injunction pending appeal. As to the merits, the Department challenged the court's decision that § 106.10's new definition of sex discrimination violated the statute. As to the court's other legal conclusions—the Rule's provisions, for example, regarding "sex-separated bathrooms" and "sex-specific pronouns"—the Department accepted them for the time being, namely during the pendency of the appeal. R.104 at 1. In addition, the Department maintained that the district court should have issued a narrower injunction, one that enjoined just (i) 34 C.F.R. § 106.31(a)(2), and (ii) 34 C.F.R. § 106.2's definition of "hostile environment harassment" as applied to "discrimination on the basis of gender identity." R.104 at 2. The Department asked the district court to stay the preliminary injunction as to all other provisions of the Rule, including § 106.10's new definition of sex discrimination. In yet another thorough opinion, this one 26 pages long, the district court rejected the motion for a partial stay. It did not have any second thoughts about its § 106.10 ruling, making it inappropriate to limit the preliminary injunction to §§ 106.2 and 106.31(a). And it reasoned that the only way to address the plaintiffs' harms given the interconnected nature of the definition of sex discrimination with respect to the other key provisions was to enjoin the Rule in its entirety.

The Department now seeks similar relief from us on an expedited basis.

## II.

Four factors guide the stay inquiry:  (1) likelihood of success on the merits; (2) irreparable harm to the plaintiffs; (3) harm to others; and (4) the public interest.  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  Granting a stay pending appeal is always "an exercise of judicial discretion," and "not a matter of right, even if irreparable injury might otherwise result."  *Id.* at 433 (quotation omitted).

*Likelihood of success.*  With respect to the first factor, the Department premises its stay motion on (1) one aspect of the district court's analysis of the underlying claims and (2) the scope of the injunction.  As for the underlying legal claim, the Department argues that the district court likely erred in assessing the validity of § 106.10's definition of sex discrimination.  As for the scope of the injunction, it claims that the district court likely erred in extending the injunction beyond § 106.2 and § 106.31(a).  We consider each argument in turn.

Start with the definition of sex discrimination under Title IX.  As we see it, the district court likely concluded correctly that the Rule's definition of sex discrimination exceeds the Department's authority.  In defining "discrimination on the basis of sex" in Title IX to extend to discrimination on the basis of "gender identity," among other categories, § 106.10, 89 Fed. Reg. 33886, the Department mainly relied on *Bostock v. Clayton County*, 590 U.S. 644, 669 (2020).  But *Bostock* is a Title VII case.  As many jurists have explained, Title VII's definition of discrimination, together with the employment-specific defenses that come with it, do not neatly map onto other areas of discrimination.  *See, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 290, 308 (2023) (Gorsuch, J., concurring) (distinguishing the Equal Protection Clause from Titles VI and VII); *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 808 (11th Cir. 2022) (en banc)*; Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1229 (11th Cir. 2023); *Brandt ex rel. Brandt v. Rutledge*, No. 21-2875, 2022

WL 16957734, at *1 n.1 (8th Cir. Nov. 16, 2022) (Stras, J., dissenting from denial of rehearing en banc). Title VII's definition of sex discrimination under *Bostock* simply does not mean the same thing for other anti-discrimination mandates, whether under the Equal Protection Clause, Title VI, or Title IX.

As to the relationship between Title VII and Title IX, the statutes use materially different language: discrimination "because of" sex in Title VII and discrimination "on the basis of" sex in Title IX. *See* 42 U.S.C. § 2000e–2(a)(1); 20 U.S.C. § 1681(a). In addition, the two statutes serve different goals and have distinct defenses. For these reasons, "it does not follow that principles announced in the Title VII context automatically apply in the Title IX context." *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021). No less importantly, Congress enacted Title IX as an exercise of its Spending Clause power, U.S. Const. Art. I, § 8, cl. 1, which means that Congress must speak with a clear voice before it imposes new mandates on the States. *See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999); *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). The same is not true of Title VII. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–453 & n.9 (1976). All of this explains why we have been skeptical of attempts to export Title VII's expansive meaning of sex discrimination to other settings. *See, e.g.*, *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 484 (6th Cir.), *cert. granted sub nom. United States v. Skrmetti*, No. 23-477, 2024 WL 3089532 (U.S. June 24, 2024) (Equal Protection Clause); *Gore v. Lee*, No. 23-5669, __ F.4th __, 2024 WL 3385247, at *5 (6th Cir. July 12, 2024) (same); *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) (Age Discrimination in Employment Act).

All three members of the panel, it bears emphasis, agree that these central provisions of the Rule should not be allowed to go into effect on August 1. Our modest disagreement turns on the question, in this emergency setting, of whether the other parts of the Rule can be separated from these central provisions.

Turn, then, to the scope of the preliminary injunction. As just shown, we disagree with the key premise of the Department's scope-of-the-injunction argument: its position that the court should not have extended the injunction to § 106.10's new definition of sex discrimination. Our reasoning shows at a minimum that the preliminary injunction properly extends to three central provisions of the Rule: §§ 106.10, 106.2's definition of hostile environment harassment, and 106.31(a).

After that, the problem is that these provisions, particularly the new definition of sex discrimination, appear to touch every substantive provision of the Rule. It is thus unsurprising, as the Department fairly acknowledges, that there are "numerous" references to sex discrimination throughout the Rule. Dep't Supp. Br. 3. In reality, each of the remaining provisions that the Department seeks to implement on August 1 implicates the new definition of sex discrimination. Take the Rule's record-keeping provision, § 106.8(f), which requires schools to preserve any notice sent to the Title IX coordinator of "conduct that reasonably may constitute sex discrimination," as well as the investigation and grievance records for "each complaint of sex discrimination." 89 Fed. Reg. 33886. Or § 106.2's definition of sex-based harassment, which amounts to "a form of sex discrimination . . . including on the bases identified in § 106.10, that [includes] . . . [h]ostile environment harassment." *Id.* at 33884. Or § 106.8, which imposes various new obligations on schools to comply with the new sex discrimination requirements: appointing Title IX coordinators, requiring training on the new scope of sex discrimination, and the like. *Id.* at 33885. Or § 106.11, which clarifies that the Rule generally requires schools to respond to sex discrimination in the United States and sometimes to sex discrimination elsewhere. *Id.* at 33886. Or § 106.40, which requires Title IX coordinators to "promptly and effectively prevent sex discrimination" by taking actions like ensuring access to lactation spaces. *Id.* at 33887–88. Or § 106.44, which requires any funding recipient "with knowledge of conduct that reasonably may constitute sex discrimination" to respond promptly with a series of corrective

measures. *Id.* at 33888. Or the Rule's grievance procedures and retaliation provision, §§ 106.45–.46, .71, which impose new rules for dealing with complaints of sex discrimination, sex-based harassment, and retaliation for reporting the same. *Id.* at 33891–96.

Through it all, each of the provisions that the Department wishes to begin enforcing on August 1 implicates the new definition of sex discrimination. It is hard to see how all of the schools covered by Title IX could comply with this wide swath of new obligations if the Rule's definition of sex discrimination remains enjoined. Harder still, we question how the schools could properly train their teachers on compliance in this unusual setting with so little time before the start of the new school year.

The Department resists this conclusion. It argues that the schools could enforce these provisions by relying on the prior definition of sex discrimination under its rules and regulations. If we denied the stay only as to the three core provisions identified above, the Department thus hypothesizes, the pre-existing definition could govern the rest of the Rule on August 1. We see a few problems with this argument. One is that we do not know the meaning of that pre-existing definition. As the Department points out, even that definition is "the subject of separate litigation." Dep't Supp. Br. 3 n.1 (citing *Tennessee v. Dep't of Educ.*, 104 F.4th 577 (6th Cir. 2024)). Another problem is that the Department has not identified any evidence that it contemplated, during the rulemaking process, how the remainder of the Rule would apply without any of its core provisions. Yes, there are severability provisions that would apply to the Rule, and the Department considered the possibility that a court might sever § 106.10 from the rest of the Rule. 89 Fed. Reg. 33848. But it did not contemplate enforcement of the Rule without *any* of the core provisions. Nor is there any suggestion that the cost-benefit analyses underlying the Rule contemplated the idea of allowing these provisions to go into effect with a *different* definition of sex discrimination.

In addition, it bears emphasizing how the Department framed its arguments below. The Department, to be sure, did identify the severability provisions. But it mainly used them to permit

the new definition of sex discrimination to go into effect, not to allow other provisions to go into effect under the prior definition of sex discrimination. In fact, the Department mentioned severability below in just a few lines of its briefs without telling the district court which other provisions should be severed. At least in the context of this emergency stay motion, we are uncomfortable granting more relief than the Department sought below. As shown, all of the provisions the Department now asks to go into effect implicate the new definition of sex discrimination.

*The other stay factors.* The equities, too, favor this approach. From an equitable perspective, educators should not be forced to determine whether this or that section of the new Rule must be followed when the new definition of sex discrimination might or might not touch the Rule. The States presented evidence that rolling out hundreds of pages of a new rule on August 1, just before the start of the school year, will place an onerous burden on them—loads of time and lots of costs that will only escalate if we leave confusion over the States' obligations under the Rule. That is particularly problematic given that the new definition of sex discrimination affects each provision of the Rule that the Department asked to go into immediate effect.

The States, to be sure, have acknowledged that some technical provisions of the Rule do not necessarily implicate the new definition of sex discrimination and are not already covered by prior regulations. But the Department did not identify these provisions in its request for relief. And with good reason, it appears. The provisions merely include definitions of four terms ("parental status," "party," "pregnancy or related conditions," and "student with a disability"), as well as eight technical amendments to existing Title IX regulations. *See* States' Supp. Br. 25 (citing § 106.3 [Amended]; § 106.15 (amending existing § 106.15); § 106.16 [Removed]; § 106.17 [Removed]; § 106.18 [Redesignated as § 106.16]; § 106.41 [Amended] (removing existing § 106.41(d)); § 106.46 [Redesignated as § 106.48]; and § 106.51 [Employment] (amending existing § 106.51(b)(6))). Although a merits panel is free to consider whether the scope of the

injunction should be narrowed to permit these technical provisions to go forward, the Department at this stage has not identified any harms that come from the preliminary injunction's coverage of these particular provisions. For that reason, and with the goal of avoiding any confusion that would come from enjoining all but the most technical portions of the Rule on the eve of a new school year, we will not exercise our "judicial discretion" to grant a stay on these points. *Nken*, 556 U.S. at 433.

We therefore deny the motion to stay the district court's preliminary injunction. To mitigate any harm to the Department, we will expedite its appeal of the district court's issuance of a preliminary injunction and direct the Clerk's Office to set a briefing schedule so that the case may be heard by a randomly assigned argument merits panel during the October sitting.

MATHIS, Circuit Judge, dissenting. The U.S. Department of Education promulgated an administrative rule under Title IX called "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance," 89 Fed. Reg. 33474 (Apr. 29, 2024). The Rule, which is set to take effect on August 1, 2024, adds or revises dozens of Title IX regulations. The State and Intervenor Plaintiffs take issue with three provisions that they say constitute a "gender-identity mandate" and have sought, among other things, injunctive relief. The district court preliminarily enjoined the entire Rule. The Department seeks to stay part of the preliminary injunction pending appeal. Because I would grant the Department's motion in part, I respectfully dissent.

For decades, Title IX has stood as a bulwark against discrimination in education. It states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," with few exceptions. 20 U.S.C. § 1681(a). Congress has

authorized the Department to issue rules and regulations that are "consistent with achievement of the objectives of" Title IX.  *Id.* § 1682.  The Department passed the Rule pursuant to that authority.

The Rule "amends the regulations implementing Title IX of the Education Amendments of 1972."  89 Fed. Reg. at 33474.  In addition to changes like revising the record-keeping requirements in 34 C.F.R. § 106.8(f), 89 Fed. Reg. at 33886, and adding a requirement in 34 C.F.R. § 106.40 that schools provide accommodations and facilities for breastfeeding students and employees, 89 Fed. Reg. at 33887–88, the Rule made amendments intended to address discrimination based on gender identity.

Plaintiffs focused their requests for injunctive relief on three provisions in the Rule.   One provision defines "[d]iscrimination on the basis of sex" to include "discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity."  34 C.F.R. § 106.10.  The second provision defines "[s]ex-based harassment" as:

> a form of sex discrimination and means sexual harassment and other harassment on the basis of sex, including on the bases described in § 106.10, that is:
> . . .
>
> (2) Hostile environment harassment.   Unwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity (i.e., creates a hostile environment).

*Id.* § 106.2.  The third provision prohibits sex separation or differentiation that causes more than de minimis harm:

> In the limited circumstances in which Title IX or this part permits different treatment or separation on the basis of sex, a recipient must not carry out such different treatment or separation in a manner that discriminates on the basis of sex by subjecting a person to more than de minimis harm, except as permitted by 20 U.S.C. 1681(a)(1) through (9) and the corresponding regulations §§ 106.12 through 106.15, 20 U.S.C. 1686 and its corresponding regulation § 106.32(b)(1), or § 106.41(b).  Adopting a policy or engaging in a

> practice that prevents a person from participating in an education
> program or activity consistent with the person's gender identity
> subjects a person to more than de minimis harm on the basis of sex.

34 C.F.R. § 106.31(a)(2). These provisions, according to Plaintiffs, constitute the Rule's gender-identity mandate.

The Department included severability statements in each of the subparts where the three above-mentioned provisions are located. Those statements provide: "If any provision of this subpart or its application to any person, act, or practice is held invalid, the remainder of the subpart or applications of its provision to any person, act, or practice shall not be affected thereby." *Id.* §§ 106.9, 106.16, 106.48.

The Department appeals and moves for a partial stay of the injunction to allow the Rule to take effect except as to the three provisions expressly challenged by Plaintiffs. This court considers four factors when deciding whether to stay a district court's injunction: (1) the likelihood that the movant will succeed on the merits of the appeal; (2) the likelihood that the movant will suffer irreparable harm absent a stay; (3) whether a stay will cause substantial harm to others; and (4) whether a stay serves the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Still, the first two factors "are the most critical." *Nken*, 556 U.S. at 434. The movant must show more than a "possibility" of irreparable injury, *id.* at 434–35, and even if a movant can demonstrate irreparable harm, "he is still required to show, at a minimum, serious questions going to the merits," *Griepentrog*, 945 F.2d at 153–54 (internal quotation marks omitted).

I would grant the Department's motion and limit the injunction to the provisions Plaintiffs challenge. The Department is likely to succeed on the merits for those provisions that Plaintiffs have not challenged. The Supreme Court has cautioned lower courts that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 585 U.S. 48, 73

(2018), and "limited to the inadequacy that produced the injury in fact that the plaintiff has established," *id.* at 68 (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  To that end, "a federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries."  *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 923 (2024) (mem.) (Gorsuch, J., concurring) (alteration in original) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  An injunction can "stray[] from equity's traditional bounds" by barring the enforcement of provisions that do not harm the plaintiffs.  *Id.*  That is precisely what has happened here.

The parties and the district court spend considerable time discussing whether § 106.10 is consistent with the Supreme Court's reasoning in *Bostock v. Clayton County*, 590 U.S. 644, 669 (2020), which held that "discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex; the first cannot happen without the second."  But we need not resolve that debate to determine that the district court's preliminary injunction preventing enforcement of the entire Rule is broader than necessary to prevent Plaintiffs' alleged irreparable harms.  *Gill*, 585 U.S. at 68; *Poe*, 144 S. Ct. at 923 (Gorsuch, J., concurring).  Enjoining only those provisions targeted by Plaintiffs' injunction motions would be sufficient.

Is the Department irreparably harmed by an enjoining the Rule even though Plaintiffs only challenge three provisions of the Rule?  I believe so.  The purpose of the Rule was "to fully effectuate Title IX's sex discrimination prohibition."  89 Fed. Reg. at 33476.  Through their motions for preliminary injunctions, Plaintiffs challenged the lawfulness of the three supposed gender-identity-mandate provisions.  The Department is irreparably harmed by the interference with its rule-making authority, which it uses to protect students from sex discrimination.  *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 704 (1979).

The harm to Plaintiffs is lessened because the provisions of the Rule that they have challenged would remain enjoined.  Thus, a partial stay would advance Title IX's core purpose of

eliminating sex-based discrimination in education while still preventing the irreparable harms enumerated by Plaintiffs. As it relates to the Rule's definition of sex discrimination in § 106.10, there is no reason the Department could not use its pre-Rule understanding of what constitutes sex discrimination under Title IX.

I am cognizant of Plaintiffs' argument that the benefits of enacting the Rule's unchallenged provisions are outweighed by the expense or confusion of phased implementation. But most of the expense is attributable to provisions that Plaintiffs neither directly challenge nor cite as a source of harm.

Injunctive relief should be tailored, specific, and no broader than necessary. The district court's preliminary injunction does not satisfy those requirements. Therefore, I would stay the injunction except for prohibiting the Department from enforcing the three provisions Plaintiffs have challenged. Because the majority holds otherwise, I respectfully dissent.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk

# The United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2024

Lyle W. Cayce
Clerk

No. 24-30399

STATE OF LOUISIANA, *by and through its Attorney General, Elizabeth B. Murrill*; LOUISIANA DEPARTMENT OF EDUCATION; STATE OF MISSISSIPPI, *by and through its Attorney General, Lynn Fitch*; STATE OF MONTANA, *by and through its Attorney General, Austin Knudsen*; STATE OF IDAHO, *by and through its Attorney General, Raul Labrador*; SCHOOL BOARD OF WEBSTER PARISH; SCHOOL BOARD OF RED RIVER PARISH; SCHOOL BOARD OF BOSSIER PARISH; SCHOOL BOARD SABINE PARISH; SCHOOL BOARD OF GRANT PARISH; SCHOOL BOARD OF WEST CARROLL PARISH; SCHOOL BOARD OF CADDO PARISH; SCHOOL BOARD OF NATCHITOCHES PARISH; SCHOOL BOARD OF CALDWELL PARISH; SCHOOL BOARD OF ALLEN PARISH; SCHOOL BOARD LASALLE PARISH; SCHOOL BOARD JEFFERSON DAVIS PARISH; SCHOOL BOARD OF OUACHITA PARISH; SCHOOL BOARD OF FRANKLIN PARISH; SCHOOL BOARD OF ACADIA PARISH; SCHOOL BOARD OF DESOTO PARISH; SCHOOL BOARD OF ST. TAMMANY PARISH; ALL PLAINTIFFS,

*Plaintiffs—Appellees*,

*versus*

UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, *in his official capacity as Secretary of Education*; OFFICE FOR CIVIL RIGHTS, *United States Department of Education*; CATHERINE LHAMON, *in her official capacity as the Assistant Secretary for Civil Rights*; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, *in his official capacity as the Attorney General of the United*

*States*; Kʀɪsᴛᴇɴ Cʟᴀʀᴋᴇ, *in her official capacity as Assistant Attorney General for the Civil Rights Division of United States Department of Justice,*

*Defendants—Appellants,*

_____

Sᴄʜᴏᴏʟ Bᴏᴀʀᴅ Rᴀᴘɪᴅᴇs Pᴀʀɪsʜ

*Plaintiff—Appellee,*

*versus*

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Dᴇᴘᴀʀᴛᴍᴇɴᴛ ᴏғ Eᴅᴜᴄᴀᴛɪᴏɴ; Mɪɢᴜᴇʟ Cᴀʀᴅᴏɴᴀ, *in his official capacity as Secretary of Education*; Oғғɪᴄᴇ ғᴏʀ Cɪᴠɪʟ Rɪɢʜᴛs, *United States Department of Education*; Cᴀᴛʜᴇʀɪɴᴇ Lʜᴀᴍᴏɴ, *in her official capacity as the Assistant Secretary for Civil Rights*; Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Dᴇᴘᴀʀᴛᴍᴇɴᴛ ᴏғ Jᴜsᴛɪᴄᴇ; Mᴇʀʀɪᴄᴋ B. Gᴀʀʟᴀɴᴅ, *in his official capacity as the Attorney General of the United States*; Kʀɪsᴛᴇɴ Cʟᴀʀᴋᴇ, *in her official capacity as Assistant Attorney General for the Civil Rights Division of United States Department of Justice,*

*Defendants—Appellants.*

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC Nos. 1:24-CV-567, 3:24-CV-563

_____

Before Jᴏɴᴇs, Dᴜɴᴄᴀɴ, and Dᴏᴜɢʟᴀs[*], *Circuit Judges.*

Pᴇʀ Cᴜʀɪᴀᴍ:[†]

_____

[*] Jᴜᴅɢᴇ Dᴏᴜɢʟᴀs would grant the motion.

[†] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 24-30399

The Department of Education requests a partial stay of the district court's order granting a preliminary injunction against the operation of the agency's final rule amending its Title IX regulations. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (Title IX Rule). We DENY the motion.

Plaintiffs' complaint and request for preliminary injunction focused on three key provisions at the heart of the 423-page Rule: proposed 34 C.F.R. § 106.10 (including discrimination on the basis of sexual orientation and gender identity); § 106.2 (broadening definition of "hostile environment harassment"); and § 106.31(a)(2) (adopting "de minimis harm" standard for determining sex discrimination). The DOE argues that the district court's order was overbroad to the extent it enjoined implementation of the entire Rule, including provisions on reporting and record-keeping obligations, grievance procedures, role and hiring of Title IX coordinators and other facilitators, and pregnancy discrimination regulations. The DOE also contends that the injunction was overbroad as to § 106.10, the implementation of which will purportedly not harm Plaintiffs, and § 106.2's inclusion of many definitions besides "hostile environment harassment." The agency relies in part on the Rule's severability provision. *See* 89 Fed. Reg. at 33,848 (stating "that each of the provisions of these final regulations . . . serve an important, related, but distinct purpose").

A stay pending appeal is "extraordinary relief" that defendants bear a heavy burden to support. *See Vote.Org v. Callanen*, 39 F.4th 297, 300 (5th Cir. 2022). We consider four factors in determining whether to grant such a stay, the two most critical of which are likelihood of success on the merits and irreparable injury. *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761 (2009).

Because the DOE has given us little basis to assess the likelihood of success, its motion must fail. The primary question as to its overbreadth contention is whether the possibility of a partial preliminary injunction was adequately identified as an option to the district court. The answer is no. Plaintiffs from the outset of the litigation sought to overturn the entire Rule, which makes major changes in the scope of coverage of Title IX, adds complex, lengthy and burdensome recordkeeping and enforcement requirements, and extends Title IX to pregnancy for the first time. The DOE's initial response to Plaintiffs' motion for preliminary relief, according to the district court, was that the Rule only amounts to a "clarification" of Title IX and does not irreparably harm Plaintiffs. The DOE commented at the end of its response that any relief should be limited to the immediate parties rather than "universal relief," and, in two conclusory sentences, that the Rule's severability provision should enable the rest of the Rule to escape the preliminary injunction. The district court made no comment about this vague attempt to limit ultimate relief, though it limited the preliminary injunction to the parties before the court.

Even if the DOE did not forfeit its severability argument, its motion places this court in an untenable position. With no briefing or argument below on the consequences of a partial preliminary injunction, we would have to parse the 423-page Rule ourselves to determine the practicability and consequences of a limited stay. But "[a]s we have repeatedly observed, we are a court of review, not first view." *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021) (citation omitted).

Moreover, the historical purpose of a preliminary injunction, as ordered by the district court here, is to maintain the status quo pending litigation. *See Hollon v. Mathis Indep. Sch. Dist.*, 491 F.2d 92, 93 (5th Cir. 1974). Several implications flow from this. First, the district court has wide latitude to craft a temporary remedy in accordance with the equities. *Trump*

No. 24-30399

*v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579, 137 S. Ct. 2080, 2087 (2017) (per curiam). Second, in doing so, the court will not abuse its discretion if its temporary order is broader than final relief. *See Doster v. Kendall*, 54 F.4th 398, 442 (6th Cir. 2022), *cert. granted, judgment vacated as moot*, 144 S. Ct. 481 (2023).

Taking these points together, granting a partial stay here would involve this court in making predictions without record support from the DOE about the interrelated effects of the remainder of the Rule on thousands of covered educational entities. This is especially problematic when the DOE is asking this court to maintain, on a temporary basis, tangential provisions that might or might not have been formulated in the absence of the heart of the Rule. This is contrary to severability analysis, which asks whether severance will "impair the function of the statute as a whole" and whether the regulation would have been enacted in the absence of the challenged provisions. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294, 108 S. Ct. 1811, 1819 (1988); *Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1144 (D.C. Cir. 2022) (citation omitted). Even more problematic would be our judicial rewriting of the Rule on what may only be a temporary basis. That, too, is not this court's job. *See also Ohio v. EPA*, 144 S. Ct. 2040 (2024) (stay of EPA rule granted pending appeal despite severability provision).

For these reasons, the DOE has not shown a likelihood of success in challenging the breadth of the district court's preliminary injunction.

In any event, Plaintiffs demonstrate beyond peradventure in affidavits and submissions that an order allowing the Rule to remain in place pending appeal would inflict enormous administrative costs and great legal uncertainty on recipients of federal funds. Irreparable harm is demonstrable by significant, unrecoverable compliance costs. *E.g., Rest. Law Ctr. v. Dep't of Labor*, 66 F.4th 593, 597 (5th Cir. 2023); *Career Colleges & Sch. of Tex. v.*

*Dep't of Educ.*, 98 F.4th 220, 234 (5th Cir. 2024). As Plaintiffs argue, the implementation and compliance costs would double if the partially implemented Rule differs from a final judgment. They would first have to amend their policies, alter their procedures, and train their employees to comply with a partial version of the Rule pending appeal, and then they would have to do it all over again to comply with the Rule as it stands at the conclusion of the litigation. And, we note, the DOE gave covered recipients only three months' time to digest and comply with its behemoth Rule, less than half of which remains. Legal uncertainty would abound as to a multitude of matters like the extent of compelled recordkeeping, sufficiency of "complaints" of sex discrimination/harassment, and obligations to monitor "offensive" speech and behavior under any partially implemented Rule.

The DOE has not shown that it would suffer irreparable injury if the district court's injunction were not partially stayed. The injunction pending appeal does not prevent the DOE from enforcing Title IX or longstanding regulations to prevent sex discrimination. The DOE can hardly be said to be injured by putting off the enforcement of a Rule it took three years to promulgate after multiple delays. Nor does an administrative agency have the same claim to irreparable harm when its bureaucratically issued rule is enjoined as a democratically elected legislative body has when one of its statutes is enjoined. *See Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1144 (5th Cir. 2021) (courts can grant "interim relief" to "preserve the *status quo ante*"); *Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (statement of Kavanaugh, J.) (acknowledging APA context relief is different from enjoining a statute).

Finally, the public interest would not be served by a temporary judicial rewriting of the Rule that may be partly or fully undone by a final court judgment.

No. 24-30399

For these reasons, the motion for partial stay is DENIED.